**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 99-20179**

**SHARON M. WILLIAMS,**

**Plaintiff-Appellee,**

**VERSUS**

**TRADER PUBLISHING COMPANY,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Southern District of Texas

July 24, 2000

Before JONES, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Defendant-Appellant Trader Publishing Company ("Trader") appeals from the district court judgment based on a jury verdict in favor of Plaintiff-Appellee Sharon M. Williams ("Williams") finding Williams had been discharged by Trader due to gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Trader challenges the jury's finding of

gender discrimination and compensatory damages, the award and amount of punitive damages, and the award and amount of attorney's fees and interest. For the reasons assigned, we affirm in part and reverse in part the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Williams was hired by Trader on April 27th, 1989 as a sales representative. From 1989 through 1995, Williams assumed multiple positions for Trader, during which time she received several raises and performance based bonuses. In 1993, Williams served as acting general manager for the Houston office of Trader. Although Williams applied for the position of full-time general manager of the Houston office, in 1994 Trader hired Ron Haas to fill the position on a permanent basis. In 1995 Trader fired Williams and she brought this suit.

Williams contends that Haas treated male employees more favorably than female employees in the Houston office of Trader. For example, she contends that Haas criticized female employees' style of dress and made recommendations to change it during visits by his supervisor. In addition, Williams contends that Haas acted friendlier to male employees than female employees. Specifically, Haas discussed problems with male employees' work openly and informally. On the other hand, he confronted female employees with criticisms of their work in formal conference room meetings. Haas

disputes that he treated employees differently on the basis of gender.

Trader contends that Williams was discharged due to a pattern of unacceptable behavior rather than because of gender. Specifically, Trader contends that Williams impaired office morale by disparaging fellow employees. For example, Trader contends that Williams called a co-worker a "bitch" and that she often addressed Haas, her supervisor, as "Ron, Ron, the leprechaun." In addition, Trader contends that Williams circulated rumors about her impending dismissal that further caused dissension in the Houston office and falsified an examination score of a fellow employee. Trader contends that it was in response to a pattern of such disruptive behavior that Williams was dismissed.

In response to Trader's accusations of "disruptive behavior", Williams introduced evidence of similar behavior by other employees that had not resulted in summary dismissal. Several former co-workers, both male and female, testified that they had called the same co-worker a "bitch" without being terminated. In addition, Williams introduced evidence that a male employee had discussed rumors of his dismissal and challenged Haas's authority, but was not immediately terminated; rather, Haas confronted the employee and offered him an opportunity to respond to the allegations. It was only after this employee admitted to the behavior that he was dismissed. Williams also introduced Trader's employee manual that stated as a general policy that

3

employees should receive an oral warning and then a written reprimand for disruptive behavior prior to dismissal -- and that while male employees were given the benefit of this procedure, she was not.

Trader argues that the situations were different in that Williams had developed a pattern of disruptive behavior which required an immediate discharge in deviation from Trader's standard procedures. On cross-examination, however, Haas admitted that generally the only disruptive behavior severe enough to justify an immediate termination by Haas rather than by his superior, Sunny Sonner (who had the ultimate authority to fire employees of Williams's level), was drunkenness at work or some other similarly severe disruption. However, Trader contends that Haas actually did not fire Williams, but that Haas reported Williams's disruptive behavior to Sonner and that Sonner (who is a woman) authorized the discharge. Williams testified that Haas fired her directly without following Trader's policy or procedure and without obtaining his supervisor's prior approval. Williams further testified that Haas did not afford her the same opportunity to admit or deny allegations against her, as Haas had given to an accused male employee, and that Haas had her escorted out of the building by security guards immediately after discharging her.

Williams filed the present suit in October 1996. After a jury trial she was awarded damages for back pay in the amount of $106,000, future earnings of $27,160, compensatory damages for pain

4

and suffering of $100,000, and punitive damages of $100,000. In addition, the district court ordered prejudgment interest on back pay and compensatory damages at a rate of ten percent and post-judgment interest at the rate of 5.407%, as well as attorney's fees of $61,479.54. Trader timely filed a notice of appeal.

## II. STANDARD OF REVIEW

In Title VII cases, once the plaintiff has established a *prima facie* case and the case been decided on the merits, the only factual review available at the appellate level is whether, taking all inferences and evidence in the light most favorable to the verdict, the evidence points so strongly in favor of the defendant-appellant that it is entitled to judgment as a matter of law. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 588 (5th Cir. 1998), *reh'g en banc granted and opinion vacated* 169 F.3d 215, *opinion reinstated* 182 F.3d 333 (5th Cir. 1999) ("after a case has been fully tried on the merits, we no longer focus on the *McDonnell Douglas* burden-shifting rubric; the inquiry becomes whether the record contains sufficient evidence to support the jury's ultimate finding of [gender] discrimination"). Accordingly, if the evidence is sufficient to uphold a jury verdict under Title VII, the appellate court should affirm both the verdict and the award of damages. *See Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999).

### III. DISCUSSION

#### A.

To prove discrimination, a plaintiff may use circumstantial evidence that she has been treated differently than similarly situated non-members of the protected class. *See Polanco v. City of Austin, Texas*, 78 F.3d 968, 977 (5th Cir. 1996). Trader contends that to satisfy the "similarly situated" requirement, the situations of the non-protected class members must be more than "similar", they must be "nearly identical." *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 ("[t]o establish a *prima facie* case in this manner, Mayberry must show that white employees were treated differently under circumstances 'nearly identical' to his") (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). In the present case, Trader contends that the circumstances of the male employees' treatment introduced by Williams were not "nearly identical" to Williams's treatment because (1) there was no evidence that the supervisors knew of the male employees' conduct and (2) that the men had not established a pattern of disruptive behavior as Williams had. In support, Trader cites a recent decision by this circuit holding that a non-tenure track professor is not "similarly situated" to a tenure track professor. *See Krystek v. University of So. Mississippi*, 164 F.3d 251, 257 (5th Cir. 1999).

6

Although Trader contends on appeal that the evidence pertaining to these male employees is not admissible because they were not in situations "nearly identical" to that of Williams, Trader itself introduced the same evidence to show that it had fired male employees for disruptive behavior in support of its motion for summary judgment. Evidence may only be introduced at the summary judgment phase of a trial if the evidence would be admissible at trial. *See* FED.R.CIV.P. 56(e) ("Supporting and opposing affidavits . . . shall set forth such facts as would be admissible in evidence). Thus, by introducing the evidence relating to these male employees, Trader took the position before the district court that the evidence would be relevant and admissible at trial to show its parity of treatment of employees of both genders.

After introducing this evidence in support of its motion for summary judgment, Trader has argued in its *motion in limine* and on appeal that the evidence cannot be introduced properly by Williams to show that the similarly situated male employees were afforded pre-termination reprimands or hearings that she was denied as proof of gender discrimination. However, because Trader offered the same comparables for purposes of its motion for summary judgment, it cannot persuasively argue that those employees were not similarly situated to Williams. The trial court did not err in admitting the evidence.

B.

Trader contends that Williams failed to establish a *prima facie* case of gender discrimination under Title VII because she could not prove that she was replaced by a member of a non-protected class. However, it is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) ("This court has previously held that the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated for discriminatory reasons"). Accordingly, that Williams may not have established that she was replaced by a male employee does not necessarily mean that she failed to establish her *prima facie* case.

C.

Trader contends that the district court abused its discretion[1] in admitting evidence with respect to Williams's general work performance because the sole issue at trial was whether Williams committed the specific acts for which Trader contends Williams was dismissed. Trader cites *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414 (7th Cir.

---

[1] In general, evidentiary decisions of the district court are reviewed for abuse of discretion only. *See Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 767 (5th Cir. 1990).

8

1984) for the proposition that, when an employer has stated specific reasons for dismissal, evidence of generally satisfactory work performance in the past does not refute such evidence and thus its admission for such purpose is reversible error if such evidence prejudiced the defendant.  In *LaMontagne*, however, the appellate court affirmed a judgment notwithstanding the verdict in favor of the employer and rejected the employee's argument that the evidence of satisfactory job performance should be considered as evidence that the employer's reason for its employment decision was a pretext.  *See id*. at 1414.  Thus, the *LaMontagne* court did not consider whether the introduction of such evidence would have been reversible error because that issue was not raised by the employee's appeal.

In the present case, Williams contends that she introduced evidence of prior satisfactory job performance not to rebut Trader's allegations of specific improper acts, but rather to establish an element of her *prima facie* Title VII case, i.e., that she was qualified for the position at the time she was discharged; by way of contrast, she used evidence of conduct by similarly situated male employees to prove that the proffered non-discriminatory reason for discharge, the alleged pattern of disruptive behavior, was a pretext.  Nonetheless, because Williams's qualifications for the position were stipulated prior to the admission of the evidence, Trader argues that Williams's job

9

performance evidence was irrelevant and should have been excluded. Assuming without deciding that the trial court may have erred in admitting the evidence, we conclude that under the circumstances of the present case, although the evidence was cumulative and could have been excluded, its admission was not sufficiently prejudicial to amount to reversible error.

D.

Trader contends that compensatory damages awarded by the jury for emotional distress were not supported by the evidence because Williams's testimony was the only evidence that tended to show these injuries. It is true that compensatory damages for emotional distress may only be awarded when specific evidence of actual harm is introduced. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 808 (5th Cir. 1996) (citing *Carey v. Piphus*, 435 U.S. 247 (1978)). This circuit has held, however, that the testimony of the plaintiff alone may be enough to satisfy this requirement. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (5th Cir. 1998); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).[2] In the present case, Williams testified specifically as to her severe emotional distress due to the discharge from her position at Trader resulting in sleep loss, beginning smoking and a severe loss of weight. Such evidence, although solely the

---

[2] This circuit in *Forsyth* upheld an award of $100,000, the precise amount awarded in the present case, based solely on the testimony of the plaintiff. *See Forsyth*, 91 F.3d at 774 ("Judgments regarding noneconomic damages are notoriously variable; we have no basis to reverse the jury's evaluation.").

10

testimony of the plaintiff, is sufficiently specific to support the jury's determination of compensatory damages. *See id.*

Trader also contends that it was reversible error for Williams to quantify her emotional distress in a dollar amount at trial without previously disclosing that figure to Trader as required under Federal Rules of Civil Procedure 26 and 37. We need not decide whether assigning a dollar figure to emotional distress damage without previously disclosing the figure is in contradiction to Rule 26, however.[3] Williams did not seek to quantify her damages at trial with a previously undisclosed dollar value. Rather, the following colloquy between Williams and her counsel occurred on direct examination at trial:

Q: Are you asking this jury to award you damages for your mental anguish?

A: Yes.

* * *

Q: Is there anyone else who is more qualified to tell you how upset you felt because you were wrongfully terminated?

A: No.

Q: In your opinion, compensating for your mental anguish, what is a fair dollar figure?

A: I don't really know.

---

[3] Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C). *See Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D.Tex. 1997).

11

Q:     How much money are you asking the jury to award you for your mental anguish?

A:     $100,000.

Williams merely testified as to her mental distress and when asked for a dollar figure that would fairly compensate her, she answered "I don't know."  Only in response to the questions of what amount was she asking for, information of which Trader was apprised before trial, did Williams mention the figure of $100,000.  Accordingly, we conclude that regardless of the reference to the dollar figure, Williams's testimony was sufficient evidence to uphold the jury's determination of damages for mental distress and that her reference to the amount prayed for did not violate Rule 26.

E.

Title VII provides for the imposition of punitive damages in intentional discrimination cases if an employer acts with malice or reckless indifference to an employee's rights.  42 U.S.C. § 1981a(b)(1).  Here, the jury found that Trader discriminated against Williams with malice or reckless indifference.  After judgment was entered, the Supreme Court revised the standard of employer liability for punitive damages in *Kolstad v. American Dental Association*, _____ U.S. _____, 119 S.Ct. 2118 (1999).  As this court has explained *Kolstad*, the Supreme Court:

> . . . adopts Restatement (Second) of Agency § 217C for imputing liability for punitive damages; they are available against a principal only when, *inter alia*, an agent employed in a managerial capacity acts in the scope of employment.  119 S.Ct. at 2126-29.  But pursuant to an

12

> exception crafted by the Court to the Restatement rule, such liability may *not* be imputed when the managerial agent's within the scope actions are "contrary to the employer's good faith efforts to comply with Title VII". *Id*. at 2129 (quotation omitted).(footnote omitted)

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999).

Trader's liability for punitive damages depends on whether Ron Haas was acting as a managerial employee within his scope of employment when Williams was discriminated against. Based on *Kolstad*, and because the discrimination occurred when Williams was fired, the answer must be no.[4] First, Haas had no authority to terminate her. In the company hierarchy, the final responsibility undisputably belonged to Sunny Sonner, since Williams was a managerial level employee. Sonner fired Williams not just because Haas recommended it but because of her independent interviews of Williams and several other witnesses.[5] Although Haas delivered the message of termination to Williams and may have taken credit for it, he was not the company's decisionmaker. Second, there was no evidence that Sonner's decision was motivated in any way by gender bias or that she ratified or approved Haas's discriminatory treatment. *Kolstad*, ____ U.S. ____, 119 S.Ct. at 2128. On the

---

[4] Judge Dennis's dissent avers that Haas had some limited authority to fire employees for blatant misconduct like on the job drunkenness. This is irrelevant to Williams's situation, and no evidence suggests otherwise.

[5] Of course, Haas's gender-biased recommendation to terminate was within his scope of authority and is sufficient to support a finding that his discrimination was a reason for Williams' termination, thus justifying the company's liability for actual damages.

13

contrary, Williams had the opportunity to confide in Sonner about Haas's discrimination, but she never did so. As Williams was herself a managerial employee, it would be incongruous, absent most unusual circumstances, to infer that she could not or need not resort to in-house means to address her discrimination complaints. Under these circumstances, the line supervisor's misconduct cannot be imputed to Trader. *Compare Kimbrough v. Loma Linda Dev. Co.*, 183 F.3d 782, 784-85 (8th Cir. 1999) (punitive damage verdict upheld where general manager turned a blind eye toward or ratified harassment of lower-level supervisor). Because we reverse the punitive damage award, it is appropriate to vacate and remand the attorneys' fee award for reconsideration by the district court, as Trader requests.

### F.

Trader contends that the district court erred in its calculation of pre and post-judgment interest. Trader did not raise this argument before the district court, and therefore we review the issue solely for plain error. *See Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734 (5th Cir. 1997). Reversal for plain error is appropriate only if in our discretion the error is (1) clear, (2) affects substantial rights and, (3) if not corrected, would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* A district court has discretion to impose a pre and post-judgment interest award to make a plaintiff

14

whole.  *See, e.g., Sellers v. Delgado Community College*, 839 F.2d 1132, 1140 (5th Cir. 1988).  This court previously has approved the imposition of the federal rate of interest in Title VII cases as making a plaintiff whole, but has not held that only the federal rate of interest is appropriate for this purpose.[6]  Considering the total circumstances of this case, we conclude that the district court's imposition of a somewhat higher rate of interest (apparently based on the state interest rate), even if error, was not plain error affecting the fairness, integrity, or public reputation of judicial proceedings.

Trader also contends that the award of attorney's fees should be reduced if the judgment is reversed or if the amount of damages is reduced.  An award of attorney's fees calculated by the "lodestar" method which is well less than the amount of compensatory damages awarded by the jury is not an abuse of discretion.  *See Hadley v. VAM PTS*, 44 F.3d 372, 375-76 (5th Cir. 1995).  Nevertheless, although we have affirmed the award of compensatory damages, punitive damages made up about 40% of the overall judgment, and the district court may choose to revisit the amount of attorneys' fees in light of Williams's revised level of success and the hours that may have been expended by her attorney for non-compensable punitive damages.  Attorneys' fees should accordingly be reconsidered on remand.

---

[6]  *See, e.g., Conway v. Electro Switch Corp.*, 825 F.2d 593, 600 (5th Cir. 1987).

15

## IV. CONCLUSION

For the reasons assigned, the judgment, except as to punitive damages and attorney's fees, is **AFFIRMED.** The award of punitive damages is **REVERSED.** The judgment for attorneys' fees is **VACATED** and **REMANDED.**

DENNIS, Circuit Judge, concurring in part and dissenting in part:

I concur in sections I, II, and III.A - III.D of the majority opinion. However, I must respectfully dissent from section III.E and the vacating of the attorney's fee award in section III.F.

Trader contends that the evidence was insufficient to support an award of punitive damages because Williams did not demonstrate that Trader's actions were "reprehensible." The Supreme Court and this circuit have recently rejected the theory that a level of egregiousness is necessary in awarding punitive damages under Title VII; all that is required to award punitive damages is that the employer act with malice or reckless disregard of an employee's protected rights. *See Kolstad v. American Dental Assoc.*, 119 S.Ct. 2118, 2124 (1999); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 281-82 (5th Cir. 1999). Under *Kolstad*, that Trader's actions lacked reprehensibility or egregiousness does not preclude an award of punitive damages. Trader does not dispute that it was aware of the rights afforded Williams under Title VII and that there was sufficient evidence to support the jury's finding that

Haas acted with sufficient malice or reckless disregard to such rights to constitute a violation of those rights. Thus, there is sufficient evidence to support the jury's award of punitive damages based on the behavior of Haas.

This is not the end of the punitive damages analysis, however. The Supreme Court in *Kolstad* held that liability cannot be imputed to the employer if (1) the discriminating employee was not a managerial employee acting in the scope of employment or (2) the employee acted contrary to the employer's good-faith efforts to comply with Title VII. *See Deffenbaugh-Williams*, 188 F.3d at 282 (citing *Kolstad*, 119 S.Ct. at 2129).

It is somewhat difficult to discern Trader's arguments with respect to the first defense; however, it appears that Trader contends that any discriminatory action by Haas in dismissing Williams cannot be imputed to Trader because Haas did not have the managerial authority to dismiss Williams. Trader asserts, and the majority agrees, that only the Executive Vice President in charge of Human Resources, Sunny Sonner, had that authority. Trader further contends that Williams makes no allegations that Sonner, the sole managerial agent for purposes of *Kolstad*, acted in a discriminatory manner and thus Trader cannot be held liable for punitive damages. It is true that for liability to be imputed to an employer, the offending agent must be employed in a managerial capacity. *See Kolstad*, 119 S.Ct. at 2128-30. However, as this

17

court said in *Deffenbaugh-Williams*, "whether an agent is a manager is a 'fact intensive' inquiry" and that "ultimately, the . . . jury will have to decide this issue on the particular facts of the case."  188 F.3d at 285 (quoting *Kolstad*, 119 S.Ct. at 2128) (quoting L. SCHLUETER & K. REDDEN, PUNITIVE DAMAGES § 4.4(B)(2)(a)).  Thus, the sole issue presented is whether the evidence points so strongly in favor of Trader that it is entitled to a judgment as a matter of law on the issue of whether Haas was a managerial agent of Trader.

In *Deffenbaugh-Williams* this court found that there was sufficient evidence to support a factual determination that an employee was a "managerial agent" in that he (1) had supervisory authority over the aggrieved employee, (2) terminated her on his own authority and (3) was in charge of six stores.  188 F.3d at 285.  Trader contends that Haas is not a managerial agent, although he did have supervisory authority over Williams, because (1) Sonner, not Haas, actually terminated Williams and (2) Haas was only in charge of one branch office.  Although in general only Sonner had final authority to terminate employees such as Williams, it is undisputed that Haas did have limited authority to discharge employees under his supervision for severe disruptive behavior, such as public drunkenness at work.[7]  It is also undisputed that

---

[7]The record flatly contradicts the statement of the majority that only Sonner had the authority to fire Williams; rather than attempt to address Haas's limited authority to fire managerial level

18

Haas told Williams that he had terminated her employment, that Williams did not receive any formal oral or written reprimand, and that Williams was escorted from the Trader office by security guards upon her termination. This evidence supports Williams's contention that it was in actuality Haas who fired her under his limited emergency authority to do so. Drawing all reasonable inferences in favor of the verdict, the evidence does not point so strongly in favor of Trader as to justify granting Trader a judgment as a matter of law on the issue of whether Haas was a managerial agent of Trader and whether it was Haas who fired Williams on his own.[8]

With respect to the second defense, Trader contends that it had complied with Title VII in good faith through its "open-door" policy encouraging aggrieved employees to contact superiors about possible violations of Title VII. This court addressed a similar argument in *Deffenbaugh-Williams*, and held that Wal-Mart's policy of encouraging employees to contact higher managers with grievances does not establish good-faith compliance with Title VII as a matter of law. 188 F.3d at 286. As in *Deffenbaugh-Williams*, Trader presented no evidence of its responses to Williams's complaints or

---

employees, the majority chooses to ignore it.

[8]Since the jury determined that Haas was a managerial agent of Trader, it is irrelevant whether Haas acted outside the scope of his employment in dismissing Williams for purposes of imputing liability to Trader for punitive damages under Title VII. *See Defffenbaugh-Williams*, 188 F.3d at 286 n.6.

of any specific efforts to comply with Title VII other than the evidence of its generic open-door policy which Williams had not used.  Accordingly, "the evidence of [Trader's] antidiscrimination good faith was certainly not so overwhelming that reasonable jurors could not conclude otherwise."  *Deffenbaugh-Williams*, 188 F.3d at 286.[9]

Trader has not demonstrated that there is insufficient evidence to support the jury's determination that Haas acted with sufficient willfulness to justify punitive damages.  Further, Trader has proved neither that there was insufficient evidence to support the jury's determination that Haas was a managerial agent of Trader nor that it had established a good faith Title VII compliance system.  Accordingly, I respectfully dissent on the issue of punitive damages and would affirm the punitive damages award.

With respect to the reversal of attorney's fees, I disagree that this court has the authority to reverse the district court's award of attorney's fees merely because it has reversed a portion of the damages award.  This court reviews the district court's lodestar calculation for clear error and any departure from the

---

[9]Despite the majority's implication otherwise, that Williams failed to avail herself of the open-door policy does not convert it into a good faith Title VII compliance system.  Whether it would have been preferable for Williams to have addressed a complaint of Haas's behavior to Sonner is irrelevant to the issue of whether Trader had established a good faith Title VII compliance system.

lodestar calculation for abuse of discretion.  *See Hadley v. VAM PTS*, 44 F.3d 372, 375-76 (5th Cir. 1995).  Thus, the district court's calculation of the lodestar amount in the present case, although it may well have been different had punitive damages not been awarded, may only be reversed by this court if such calculation was clearly erroneous.

It is well settled that if a prevailing party under Title VII is entitled to attorney's fees for all hours worked on claims, victorious or not, that "arise out of the same course of conduct and are not easily separated on the basis of each claim or defendant."  *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987); *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998); *id*. At 1056 (Barksdale, J., dissenting) ("However, I disagree with the majority's implicit conclusion that, when calculating the lodestar, the magistrate judge did not clearly err by including hours spent on unsuccessful claims and unnecessary discovery in pursuit of irrelevant evidence.").  The Supreme Court has explained this principle as follows:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Applying Supreme Court and this circuit's precedent to the present case, it does not appear that the district court's lodestar calculation was clearly erroneous. Williams was victorious on <u>all</u> her claims of liability and, under the majority opinion, has merely failed to prevail on appeal in seeking punitive damages against Trader. Trader has not demonstrated that the legal services of Williams's counsel related to the largely parasitic claims of punitive damages were not totally subsumed within the legal services necessary to the successful prosecution of the underlying claims of liability and compensatory damages, let alone show that such legal services related to punitive damages did not "arise out of the same course of conduct" or that they are "easily separated on the basis of each claim or defendant." *Cobb*, 818 F.2d at 1235.

That the punitive damages are being reversed on appeal does not affect this analysis. This circuit has in the past affirmed a district court's calculation of attorney's fees as not an abuse of discretion despite reversing a punitive damage award that reflected a significantly greater percentage of the total award than in the present case. *See Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir. 1993) (affirming liability and compensatory damages of $30,000, reversing punitive damages of $100,000, and affirming attorney's fees of over $20,000). As I thus believe that this panel is departing from circuit and Supreme Court prece4dent by vacating the attorney's fees award without any showing of clear error in the

award by the appellant, but rather as a matter of law merely because part of the award has been reversed or reduced on appeal, I must respectfully dissent.