Gaines WATKINS, Plaintiff,

v.

INPUT/OUTPUT, INC., Defendant.

Civil Action No. H–05–3940.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 17, 2007.

Todd W. Mensing, John Zavitsanos, Ahmad Zavitsanos et al., Houston, TX, for Plaintiff.

Mark J. Levine, Levine & Associates, P.C., Andrew S. Golub, Dow Golub Berg & Beverly LLP, Houston, TX, for Defendant.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Plaintiff Gaines Watkins' Motion for Entry of Judgment (Document No. 100). Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted in part and denied in part.[1]

## BACKGROUND

Plaintiff Gaines Watkins ("Watkins"), a ten-year employee at Defendant Input/Output, Inc.'s ("I/O") Stafford, Texas manufacturing plant, worked as a supervisor in various managerial positions with the company from 1992 until he was terminated in April 2002. I/O, a Delaware corporation doing business in Texas, terminated Watkins at age 68 ostensibly because Watkins refused to participate in outsourcing the work done at the Stafford

---

1. The Court notes that in addition to each party's response and reply, it considered Defendant's surreply filed yesterday, August 16, 2007.

plant. Moreover, I/O averred the company was suffering financial losses which necessitated a thirty percent reduction in its workforce by eliminating 200 jobs, including Watkins's. In 2003, Watkins filed suit against I/O, alleging the company unlawfully terminated him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Watkins alleged I/O terminated him because it instituted a policy favoring younger workers and eliminating older workers.

On June 26, 2007, a jury returned a verdict in Watkins's favor with respect to his age discrimination claim and found I/O acted willfully when it discharged him. The jury awarded Watkins back pay in the amount of $450,000 and answered an advisory question on the issue of front pay, awarding future damages in the amount of $50,000. Watkins now moves the Court to enter a final judgment seeking 1) back pay and liquidated damages based upon the jury's finding Defendant willfully violated the ADEA, 2) reinstatement, or in the alternative, front pay, 3) attorneys' fees, 4) taxable court costs, and 5) post-judgment interest.

## LAW AND ANALYSIS

The ADEA incorporates the remedies authorized by the Fair Labor Standards Act. See Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 399 (5th Cir.2002); see also 29 U.S.C. §§ 626(b), 216(b) (2006). A primary remedial purpose of the ADEA is to make the victim of discrimination whole, and courts have broad authority to grant such legal or equitable relief as may be appropriate. Julian v. City of Houston, Tex., 314 F.3d 721, 728 (5th Cir.2002).

## I. BACK PAY AND LIQUIDATED DAMAGES

Watkins requests that the Court enter judgment for the jury's back pay damage award of $450,000 and an equal amount of liquidated damages.[2] Under the ADEA, an award of liquidated damages should only be made if a violation of the statute is found to be willful. See 29 U.S.C. §§ 216(b), 626(b). Watkins avers, and I/O does not dispute, that because the jury found I/O's termination of Watkins was wilful, a liquidated damage award is mandatory. The United States Court of Appeals for the Fifth Circuit holds that "liquidated damages in an amount equal to the back pay award are mandatory upon a finding of wilfulness." Tyler, 304 F.3d at 401. Because the jury found I/O's violation of the ADEA was willful, the Court grants Watkins's motion for $450,000 in back pay and $450,000 in liquidated damages. See id.

## II. REINSTATEMENT, OR IN THE ALTERNATIVE, FRONT PAY

Watkins moves for reinstatement to his former position at I/O. If reinstatement is not feasible, Watkins requests, in the alternative, that the Court increase the jury's advisory award of $50,000 in front pay to $233,185, an amount consistent with the future expected earnings calculation of his economic expert. In response, I/O argues that reinstatement is not feasible and an award of front pay is inappropriate.

A court has discretion to determine whether to award reinstatement or front pay so long as the relief granted is consistent with the purposes of the ADEA. Brunnemann v. Terra Int'l Inc., 975 F.2d 175, 180 (5th Cir.1992). Generally, reinstatement is the preferred equitable reme-

---

**2.** I/O does not contest the jury's award of $450,000 for backpay or dispute the sufficiency of the evidence that supports it.

dy for a discriminatory discharge. *Julian*, 314 F.3d at 728. However, if reinstatement is not feasible, front pay will be awarded if it is consistent with the remedial purposes of the ADEA.[3] *Brunnemann*, 975 F.2d at 180. Because reinstatement is the preferred remedy, the Court must first consider whether reinstatement is appropriate. *Julian*, 314 F.3d at 729; *see also Walther v. Lone Star Gas Co.*, 952 F.2d 119, 128 (5th Cir.1992) (stating that because front pay is the remedy of choice in an age discrimination case, front pay will not be awarded unless reinstatement is not feasible).

▇ In this case, I/O employed Watkins in a managerial position from 1992 until he was terminated in April 2002. The jury determined Watkins was terminated because of his age, and I/O's discharge was wilful. I/O's contends, as it has throughout the litigation, that Watkins's position was eliminated and thus, reinstatement is not feasible. The Court notes that the parties have been engaged in extensive litigation for the past three years. Although the protracted litigation does not, standing alone, persuade the Court that reinstatement is not feasible, it is evidence that there is less likelihood that Watkins could be a satisfactory employee at I/O. *See e.g., Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir. 1990) (explaining that reinstatement may be inappropriate after a trial when there may be less likelihood that a plaintiff could be a satisfactory employee). However, even though the parties disagree whether Watkins's position has been eliminated, the parties do not dispute that I/O's corporate structure has been significantly restructured, that I/O significantly reduced its workforce because of financial need, or that I/O has outsourced some jobs performed during Watkins's tenure with the company. Moreover, I/O contin-

ues to maintain its position that Watkins's former managerial and supervisory role does not exist. Thus, the Court finds reinstatement is not feasible because it could disrupt I/O's management structure, existing management positions, and corporate goals. *See id.* (explaining that if the plaintiff has been replaced, reinstatement may not be feasible because it could disrupt the employment of others).

▇ Because reinstatement is not feasible, the Court must consider whether to award Watkins front pay. Because front pay is an equitable remedy, a court rather than a jury should determine whether an award of front pay is appropriate and if so, the amount of the award. *See Julian*, 314 F.3d at 729 n. 25 (citing *Walther*, 952 F.2d at 127). But a court may determine the amount of the award with the assistance of an advisory jury question. *Id.* However, "a substantial liquidated damage award may indicate that an additional award of front pay is inappropriate or excessive." *Julian*, 314 F.3d at 730 (citing *Walther*, 952 F.2d at 127). Thus, an award of front pay would be inappropriate if it is inconsistent with the remedial purposes of the ADEA's "make whole" philosophy. *Brunnemann*, 975 F.2d at 180. Thus, the Court determines whether an award of front pay would be consistent with the ADEA's "make whole" philosophy. *See id.*

▇ Watkins's economic damages expert, Dr. Herbert Lyon, calculated Watkins's past loss of expected earnings in the amount of $478,700 and future loss of expected earnings in the amount of $233,185 for a total damage calculation of $711,885. The parties submitted the expert's findings and an advisory question to the jury regarding front pay. The jury returned an award of $50,000 for future damages sus-

---

**3.** Front pay is money awarded for future lost compensation. *See id.*

tained by Watkins. However, because Watkins will herein recover $900,000 in back pay and liquidated damages, if the Court awarded front pay, Watkins would receive more than the total $711,885 *past and future* loss of expected earnings calculated by Dr. Lyon. Under these circumstances, the Court declines to award front pay because Watkins received a substantial liquidated damage award that is sufficient to compensate him for the wages and benefits he would have received if he had not been terminated.[4] *See Walther*, 952 F.2d at 127 (explaining that a substantial liquidated damage award may indicate that an additional award of front pay is excessive); *see also Tyler*, 304 F.3d at 402 (explaining that front pay is intended to compensate a plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination).

## III. ATTORNEYS' FEES

As the prevailing party, Watkins seeks attorneys' fees in the amount of $478,251.67. Moreover, Watkins avers the case was exceptional and warrants a ten percent enhancement of the lodestar attorneys' fees calculation. I/O does not dispute that Watkins is entitled to reasonable attorneys' fees, but argues he is not entitled to all fees requested or an enhancement.

The ADEA incorporates the remedies of the FLSA which, in turn, provides that "[t]he Court ... shall, in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167,

110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (explaining that the ADEA incorporates the enforcement provisions of the FLSA). To determine the amount of attorneys' fees to be awarded, the Fifth Circuit utilizes a two-step process, called the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir.1995). Under this method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Id.* at 324. Then, the Court must determine a lodestar by multiplying the reasonable hours by the reasonable hourly rates. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

There is a strong presumption of the reasonableness of the lodestar amount. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir.2006). However, after calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *Id.*

■ The most critical factor in determining an attorneys' fee award is the degree of success obtained. *Saizan*, 448 F.3d at 799. Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *Id.; see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir.2002); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Sai-*

---

**4.** Although Watkins argues for a larger front pay award than the jury awarded because Dr. Lyon's calculations were too conservative and did not, *inter alia*, include stock options or correctly calculate an average bonus amount, the Court agrees with I/O that Watkins did not establish such losses or compensation at trial. Thus, the Court declines to infer Dr. Lyon's economic damage calculations were too conservative or incorrect.

zan, 448 F.3d at 799. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. Id.; Walker, 313 F.3d at 251.

A fee applicant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the reimbursement. Bode v. United States, 919 F.2d 1044, 1047 (5th Cir.1990). Thus, courts generally require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours. Id. If the documentation is vague or incomplete, a court may reduce the hours. Kellstrom, 50 F.3d at 324.

### A. Hours Claimed

A court's first step in determining reasonable attorneys' fees is to determine whether the hours claimed were reasonably expended on the litigation. Id. Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended. League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist., 119 F.3d 1228, 1232 (5th Cir.1997). If the hours are not reasonably expended, they should be excluded from the initial fee calculation. Kellstrom, 50 F.3d at 324. Watkins's lead counsel, John Zavitsanos ("Zavitsanos"), of the law firm Ahmad, Zavitsanos & Anaipakos, P.C., submitted supporting affidavits and detailed billing records as evidence of the reasonableness of the hours spent. Specifically, the records show the time spent on the case was apportioned respectively: Joseph Ahmad ("Ahmad")—21.2 hours; Zavitsanos—313.1 hours; Todd Mensing ("Mensing")—1,033.3 hours; Paralegal Kelly Leiker ("Leiker")—604.1 hours;

Paralegal Michell Rivers ("Rivers")—93 hours; Paralegal Lynette Peter ("Peter")—12.5 hours for a total of 2,076.6 hours. However, I/O objects to the number of hours charged. Specifically, it contends Zavitsanos failed to exercise billing judgment, the time billed was excessive, and the paralegal time should not have included administrative functions.

In response, Zavitsanos revised the requested attorneys' fees to exclude some of the hours billed. Specifically, Mensing's hours were reduced by 10 hours from 1,033.3 to 1,023.1 hours; Leiker's hours were reduced by 228.1 hours from 598.8 to 361.7 hours; Rivers's hours were reduced by 60 hours from 93 to 38 hours; and Peter's hours were reduced by 6 hours from 13.2 to 6.2 hours. Thus, Zavitsanos adjusted his original request for attorneys' fees downward from 2,076.6 hours to a total of 1,759.2 billable hours. As a result of reducing the number of hours billed, the original request of $513,926 in attorneys' fees was reduced to $478,251.67.

In support of his contention that the number of hours is reasonable, Zavitsanos indicates that his firm's total number of hours billed was lower than the number of hours actually spent. He avers duplicative or unnecessary hours were deleted from the records submitted to the Court. Furthermore, Zavitsanos indicates he did not participate in the case until trial in order to allow Mensing, an attorney with a lower billing rate, to work on the case.

Although Zavitsanos avers that $40,000 worth of time was deleted from its billing records because there were duplicative or unnecessary hours, billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive or redundant. Saizan, 448 F.3d at 799. Thus, Zavitsanos failed to exercise billing judgment with respect to hours worked that were not documented in

its billing records. *See id.* Although Zavitsanos subsequently exercised billing judgment in writing off some hours contained in the billing record as a result of I/O's objections, the Court agrees with I/O that some of the remaining hours are nonetheless duplicative, excessive or vague.

A few examples are instructive. Mensing avers he spent 7.5 hours preparing a motion for leave to file a request for a jury trial.[5] However, when I/O removed the case to federal court in 2005, it demanded a jury trial. Thus, the Court's March 7, 2006 scheduling order listed the case as a jury trial. Thus, the Court finds these hours billed are unnecessary.

I/O also contends other hours were excessive. Specifically, I/O avers the hours preparing for a one-day mediation, reviewing documents, and preparing for depositions are excessive. I/O asserts, and the Court agrees, Mensing spent an excessive amount of time reviewing documents. The record shows Mensing recorded at least 67 hours for document review. Although the Court realizes there were voluminous records and document review is an integral part of a case, the Court is not persuaded that Mensing could not delegate more hours reviewing documents to personnel whose lesser experience and skill would not justify a $300 per hour rate. *See Leroy v. City of Houston,* 906 F.2d 1068, 1079 (5th Cir.1990).

Additionally, the Court agrees with I/O that the hours billed for preparing to take depositions is excessive. As examples, I/O points out the billing records show that, *inter alia,* Mensing spent 30 hours to prepare for an expert's three-hour deposition, 16 hours preparing for a one-day deposition, 17.5 hours to prepare for 10 hours of depositions, and 6 hours to prepare for a

one-hour deposition. Moreover, the Court finds numerous hours regarding "document review," "preparing for depositions," and "trial preparation" are too vague. *See Kellstrom,* 50 F.3d at 326 (citing *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991) (finding a court has sufficient leeway to accept or reject fee applications that include vague entries such as "legal research," "trial preparation," and "met with client")).

Those who are entitled to higher hourly compensation because of greater than normal experience and skill may reasonably be expected to accomplish the task in fewer hours. *Leroy,* 906 F.2d at 1079. The Court agrees that the personnel working on the case are experienced employment attorneys and paralegals and that the time expended for these tasks is excessive and the documentation is too vague. Accordingly, the Court reduces the hours charged by 30% for each person's participation in the case. Thus, the Court finds the reasonable hours spent by the firm include: Zavitsanos—219.2 hours; Ahmad—12 hours; Mensing—716.2 hours; Leiker—253.1; Rivers—27 hours; and Peter—4.3 hours.

### B. Hourly Rates

I/O does not specifically object to the hourly rates used by Watkins in calculating its award of attorneys' fees. The firm billed the following hourly rates: Zavitsanos and Ahmad at $385 each; Mensing at $300; paralegal Peter at $140; paralegal Leiker at an hourly rate that ranges from $80 to $115; and paralegal Rivers at $90.

Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits. *Tollett v. City of Kemah,* 285

---

5. The Court notes the May 2, 2006 entry includes conferencing with opposing counsel regarding deposition dates. However, the Court presumes most of the 2.5 hours was spent preparing the motion rather than setting dates.

F.3d 357, 368 (5th Cir.2002). Watkins bears the burden of producing evidence that the requested rate is appropriate within the Houston market. *See Deltatech Constr., LLC v. The Sherwin–Williams Co.*, No. Civ.A.04–2890, 2005 WL 3542906, at *3 (E.D.La. Nov. 3, 2005). Generally, the reasonable hourly rate for a particular community is established thorough affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 357 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir.1993)). The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits. *See Deltatech Constr., LLC*, 2005 WL 3542906, at *3.

Watkins's counsel did not offer affidavits from other attorneys, but relied on Zavitsanos's affidavit, which claims the fees are reasonable. Zavitsanos's affidavit avers he currently charges $460 per hour and Mensing currently charges $340 per hour. Thus, both attorneys charge higher hourly rates than $385 and $300 respectively that they seek in this case. Moreover, his affidavit recites his extensive experience in employment law. Additionally, he points the Court to numerous specific cases in which he and the law firm received fee awards and the rates awarded in those cases. Although the Court finds the firm increased its rates from past awards, I/O does not oppose the rates charged, and the Court finds they are consistent with the prevailing Houston market rates.[6]

## C. Lodestar Adjustment

After calculating the lodestar amount, a court may adjust the amount upward or downward based upon the circumstances of the case by considering the twelve *Johnson* factors.[7] *Saizan*, 448 F.3d at 800. Of the *Johnson* factors, a court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel. *Id.* However, the lodestar may not be adjusted due to a *Johnson* factor if the lodestar calculation already took that factor into account. *Id.*

### 1. Johnson Factors

Considering the other *Johnson* factors that were not subsumed within the lodestar analysis, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Saizan*, 448 F.3d at 800. Accordingly, the eighth *Johnson* factor—the amount involved and the results obtained—requires the Court to determine Watkins's success as a factor in evaluating a reasonable fee award. Based upon the expert's analysis of the damages Watkins sustained as a result of a wrongful termination, Watkins sought about $711,885 in damages. Because the jury found I/O's conduct was willful, Watkins will recover herein a damage award of $900,000. Thus, the Court finds Watkins completely successful because he prevailed on his cause of action,

---

**6.** The Court notes that the law firm billed Leiker's hours ranging from $80 to $115 per hour, most of which were billed at $115. Because the Court reduced the number of hours by 30%. the Court finds an hourly rate of $115 for Leiker is reasonable.

**7.** The *Johnson* factors are: 1) the time and labor required to represent the client; 2) the novelty and difficulty of the issues in the case; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney; 5) the customary fee charged for those services in the relevant community; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *See id.* at 800 n. 18.

and his damage award exceeded the amount of damages he sought.

Considering the other *Johnson* factors—including whether the fee is fixed or contingent; time and labor required to litigate the matter, the undesirability of the case; the nature and length of the professional relationship with the client—the Court recognizes that Watkins's counsel took the case on a contingency basis. Despite the risk a firm assumes in a contingency case and its monetary investment in a case that may prove unsuccessful, the contingent nature of a case cannot serve as a basis for an enhancement of attorneys' fees. *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir.1993). The Court, therefore, will not adjust the lodestar based upon the contingent nature of the case.

Although the attorneys dedicated a significant amount of time to this case, there is no evidence the attorneys had to refuse other work to litigate the case. Moreover, because the case spanned more than three years, the attorneys who worked on the case apparently had time available to devote to other employment opportunities. Finally, there is no evidence Watkins was an undesirable client or did not fully cooperate with his attorneys. Accordingly, the Court concludes that the *Johnson* factors do not warrant an upward or downward adjustment of the lodestar.

### 2. Exceptional Case Enhancement

Zavitsanos contends the case warrants a ten percent enhancement of the lodestar amount because it is an exceptional case. He posits it is exceptional because I/O both vigorously disputed its liability and argued that any award of back pay should be based upon a limited period of time.[8] I/O disagrees that the case was exceptional

and avers that an enhancement would improperly reward Watkins's counsel for merely being the prevailing party which is an inadequate basis for an upward adjustment of the lodestar.

■ As noted previously, there is a strong presumption that the lodestar amount is reasonable. *Saizan*, 448 F.3d at 800. Enhancement of the lodestar amount based upon the complexity of the issues and results obtained is only appropriate in rare and exceptional circumstances and must be supported by specific evidence in the record. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999); *Shipes*, 987 F.2d at 320–21.

■ Despite the excellent advocacy provided by counsel for both plaintiff and defendant, the Court does not find the case to be exceptional. It involved one plaintiff, one defendant and one cause of action under the ADEA. Although Watkins was a prevailing party, the Court finds this fact alone does not warrant an upward adjustment because the lodestar is strongly presumed reasonable. *See Heidtman*, 171 F.3d at 1043 (citing *Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) for the proposition that the "complexity of the issues" and "results obtained" are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award). Moreover, there is no evidence it is customary in Houston to charge an additional fee above the hourly rates for an exceptional result after lengthy and protracted litigation. *See Shipes*, 987 F.2d at 322. Therefore, Court finds the case was relatively straightforward and does not warrant an upward adjustment of the lodestar amount.

---

8. Specifically, I/O sought to limit the back pay award based upon its position that Watkins's position was eliminated shortly after he was terminated.

### 3. Motion Fees

Watkins also requests attorneys' fees in the amount of $9,900 for preparing a reply to I/O's objection to his requested attorneys' fees. However, the Court finds that Watkins failed to exercise billing judgment in its original request and the hours requested were excessive or vague. Thus, I/O's objections were warranted, and the Court declines to award attorneys' fees to Watkins for preparing a response,

### 4. Contingent Fee Award

■■■■ Finally, Watkins requests contingent fee awards, one of which is for $150,000 in the event I/O files an appeal and Watkins prevails. I/O argues a conditional award of fees would be speculative and should be denied at this time. The Court agrees an award of attorneys' fees for appellate work may be permitted for a prevailing party. FED. R.APP. P. 39(a). However, if an appellant is entitled to attorneys' fees, the Fifth Circuit remands the appropriate fee determination to the district court once the claim for fees is ripe for adjudication. *See Williams v. Trustmark Ins. Co.,* 173 Fed.Appx. 330, 335 (5th Cir.2006) (remanding the district court's award of attorneys' fees and instructing the court to include a prevailing plaintiff's appellate fees); *see also* FED. R.APP. P. 39(a). However, a district court's refusal to award appellate attorneys' fees before an appeal has even been taken is not error. *Penton v. Am. Bankers Ins. Co. of Fla.,* 115 Fed.Appx. 685, 686 (5th Cir.2004) (citing *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.,* 334 F.3d 423, 433 (5th Cir.2003)). Thus, because I/O has not filed any additional motions or an appeal, the Court declines to conditionally award fees in advance of work performed. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.,* No. Civ.A. 5:02–CV–101–C, 2003 WL 21662829, at *7 (N.D.Tex. July 15, 2003) *rev'd on other grounds,* 382 F.3d 546 (5th Cir.2004); *see also Instone Travel Tech Marine & Offshore,* 334 F.3d at 433 ("It is difficult to imagine how a district court's refusal to award appellate attorney fees before an appeal had even been taken could possibly be declared an error.").

As a result of its analysis of reasonable attorneys' fees, the Court awards attorneys' fees in the following amounts: Zavitsanos—$84,392 for 219.2 hours at $385; Ahmad—$4,620 for 12 hours at $385; Mensing—$214,860 for 716.2 hours at $300; Leiker—$29,106.5 for 253.1 hours at $115; Rivers—$2,430 for 27 hours at $90; and Peter—$602 for 4.3 hours at $140. Thus, the Court awards a total of $336,010.50 in attorneys' fees.

## IV. TAXABLE COSTS

Watkins originally requested $40,908.51 in taxable costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Rule 54.2 of the United States District Court for the Southern District of Texas. Specifically, Watkins requested 1) fees for service of summons and subpoena in the amount of $1,555; 2) fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case in the amount of $1,788.06; and 3) fees for witnesses in the amount of $320; 4) fees for exemplifications and copies of papers necessary obtained for use in the case in the amount of $2,295.76; and other costs in the amount of $34,949.69. Watkins avers these costs were necessarily incurred during the case.

In response, I/O objects to numerous fees requested, including fees for a private process server, multiple subpoenas and non-testifying witness fees, mediation costs, video equipment costs, and costs associated with the second deposition of Dr. Mary Gray. In reply, Watkins agreed to redact the $2,000 cost of mediation and $240 in witness and subpoena fees. How-

ever, Watkins avers it already redacted the cost of Dr. Gray's second deposition. Thus, after redacting some costs, Watkins requests costs in the amount of $38,668.51.

Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). Furthermore, the Fifth Circuit strongly presumes that courts will award costs to the prevailing party. *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. USA.*, 891 F.2d 533, 539 (5th Cir. 1990)). A losing party's good faith is alone insufficient to justify a court's denial of costs to the prevailing party. *Pacheco v. Mineta*, 448 F.3d 783, 795 (5th Cir.2006). To determine who is a prevailing party, a court must look at the case as a whole. *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir.1991). Successful recovery on every issue is not required in order to be deemed a prevailing party. *Id.* Title 28 U.S.C. § 1920 identifies recoverable costs:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006) ("§ 1920"). A court may decline to award the costs listed in the statute, but may not award costs omitted from the list. *Cook Children's Med. Ctr. v. New England PPO*, 491 F.3d 266, 274–75 (5th Cir.2007) (citing *Crawford*

*Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)).

Before a court taxes a bill of costs, the party claiming the cost shall attach an affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed. 28 U.S.C. § 1924 (2006). If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir.1990). Watkins submitted the appropriate affidavit and billing records. The parties agreed to redact $240 in duplicative costs for witness and subpoena fees and $2,000 in mediation fees. Thus, the Court determines whether Watkins is entitled to the remaining costs requested.

## A. Prevailing Party

The gravamen of the parties' dispute centered around whether I/O wrongfully terminated Watkins on the basis of his age. The jury found I/O wrongfully terminated Watkins and its conduct was wilful. Accordingly, the parties do not dispute that Watkins is entitled to costs as the prevailing party. *See* Fed.R.Civ.P. 54(d)(1).

## B. Fee for Service of Summons

 Watkins requests fees in the amount of $1,555 for costs of a private process server and posits these fees are recoverable. However, private process server fees are not recoverable fees of the clerk and marshal under § 1920. *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F.Supp.2d 684, 685–86 (E.D.Tex.2007)(citing *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir.1997)); *Halliburton Energy Servs., Inc. v. M–I, LLC*, 244 F.R.D.

369, 370–71 (E.D.Tex.2007). Thus, the Court will deduct $1,555 from the award of costs.

## C. Video Equipment Fees

■ The parties dispute whether audio/visual equipment is a taxable cost. Audio visual equipment fees are not specifically included in § 1920 and are thus, not taxable costs. *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 529–30 (5th Cir.2001). Moreover, other district courts have properly refused to award costs associated with video depositions. *See E.E.O.C. v. Mother's Work Inc.*, 233 Fed.Appx. 395, 396–97 (5th Cir.2007) (finding the district court did not abuse its discretion in refusing to award costs associated with video depositions). Thus, the Court reduces $2,072.44 from the costs associated with trial equipment.

## D. Second Deposition of Dr. Mary Gray

The parties dispute whether Watkins properly included costs associated with the second deposition of Dr. Mary Gray. Apparently, the parties agreed to Dr. Gray's second deposition with the understanding that Watkins would absorb the cost of it. The Court notes that Watkins redacted $1,814 of costs associated with this particular deposition. However, the Court finds the total cost of the second deposition was $2,390. Thus, the Court reduces $566 from Watkins's costs associated with Dr. Gray's second deposition.

Upon thorough review of the record, the Court finds Watkins demonstrated that the remaining costs necessarily resulted from the litigation. However, based upon the parties' submissions and the Court's review of the bill of costs, the Court reduces $4,193.44 Watkins's request. Thus, the Court awards Watkins $34,475.07 in costs.

## V. POST-JUDGMENT INTEREST

Watkins requests, and I/O does not oppose, post-judgement interest at the rate of 4.94% under 28 U.S.C. § 1961 ("§ 1961"). Under § 1961, interest is allowed on a money judgment in a civil case recovered in district court. § 1961(a). Moreover, the interest is computed daily to the date of payment and compounded annually. § 1961(b). A court has discretion to impose a post-judgment interest award to make a plaintiff whole. *Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir.2000). Accordingly, a court may impose the federal rate of interest but is not bound to do so. *See id.* (finding that a district court's imposition of a higher rate than the federal rate to make a plaintiff whole in a Title VII case was not clear error). The Court finds the current federal interest rate, 4.78%, is appropriate to make Watkins whole.

## VI. ENTRY OF JUDGMENT

Watkins requests, and I/O does not dispute, that he prevailed on his ADEA cause of action. Thus, the Court grants his request for entry of judgment in his favor.

## CONCLUSION

Accordingly, the Court hereby

ORDERS that Plaintiff Gaines Watkins' Motion for Entry of Judgment (Document No. 100) is GRANTED IN PART and DENIED IN PART. The Court further

ORDERS that Watkins's request for back pay is GRANTED. Plaintiff Gaines Watkins shall recover $450,000 plus interest in back pay from Defendant Input/Output, Inc. The Court further

ORDERS that Watkins's request for liquidated damages is GRANTED. Plaintiff Gaines Watkins shall recover $450,000 plus interest in liquidated damages from Defendant Input/Output, Inc. The Court further

ORDERS that Watkins's request for attorneys' fees is GRANTED IN PART and DENIED IN PART. Plaintiff Gaines Watkins shall recover attorneys' fees in the amount of $336,010.50 from Defendant Input/Output, Inc. The Court further

ORDERS that Watkins's request for costs is GRANTED IN PART and DENIED IN PART. Plaintiff Gaines Watkins shall recover costs in the amount of $34,475.07 from Defendant Input/Output, Inc. The Court further

ORDERS that post-judgment interest is 4.78%. The Court further

ORDERS that all other relief not expressly granted herein is denied.