Mary O'BRIEN, Plaintiff–Appellant–
Cross–Appellee,

v.

LUCAS ASSOCIATES PERSONNEL, INC., doing business as Lucas Group; Lucas Associates, Inc., Defendants–Appellees–Cross–Appellants.

No. 04–10738.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Decided April 5, 2005.

---

John Edward Wall, Jr., Law Offices of John E. Wall, Jr., Dallas, TX, for Plaintiff–Appellant–Cross–Appellee.

Stephen E. Fox, Jason Michael Ross, Fish & Richardson, Dallas, TX, for Defendants–Appellees–Cross–Appellants.

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM: *

Appellant challenges the grant of summary judgment against her sex discrimination claims, while the employer cross-appeals the denial of attorneys' fees requested pursuant to Texas law. We AFFIRM the district court's judgment on the merits but REVERSE and REMAND for further consideration of the attorneys' fees request.

## Background

Lucas Associates Personnel, Inc., d/b/a Lucas Group Lucas Associates, Inc. ("Lu-

---

* Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

cas") is a privately held recruitment firm, divided into military, legal and executive search groups. In February of 1997 Cathy de Martino, vice-president of the executive search group, and Art Lucas, company president, hired Mary O'Brien as a managing partner of the executive search group and as a recruiter in the Dallas office. *See* R. at APP000004 (de Martino Aff.). As a managing partner, O'Brien's primary charge was leading and building the Dallas executive search group. *Id.* As a recruiter, she was responsible for selling Lucas's executive recruiting services. *Id.* Between 1997 and 1999, O'Brien hired twenty-one people. However, the turnover rate of her hires was ninety percent; a total of nineteen employees, male and female, either resigned or were terminated during her tenure. *Id.; see also* R. at APP0000010 (Roush Aff.). Pursuant to company policy, every exiting employee completed an exit interview form. Many criticized O'Brien's management style and remarked that she was a difficult person for whom to work. Those who continued in the employ of Lucas also registered complaints about O'Brien's management style. *See* R. at APP0000010–11 (Roush Aff.).

In reaction to her turnover rate and employee complaints, de Martino counseled O'Brien on her leadership and management style. *See* R. at APP000004 (de Martino Aff.). In May of 2000, in response to continued problems, de Martino used part of the division's budget to hire a professional "executive coach" to help O'Brien improve her management skills. *Id.* at APP000005 (de Martino Aff.); *see also* R. at APP0000011 (Roush Aff.). de Martino also instituted a "corrective action plan," that required O'Brien to, inter alia,

develop clear and consistent employee expectations, focus on building team spirit with regular meetings, sales contests, group outings and training, and work on her office etiquette (e.g., O'Brien was prohibited from gossiping and sending negative e-mails to employees). *See* R. at APP000005 (de Martino Aff.).

One year later, complaints about O'Brien persisted. Several more employees resigned, many citing O'Brien as the reason for their departure. *Id.* Many of the continuing employees characterized O'Brien as "hostile," a "gossip," "mean," "misleading," and a "playground bully." de Martino and Lucas decided to terminate O'Brien as a managing partner in May of 2001, but allowed her to retain her recruiter position. *Id.* at APP000006. de Martino assumed O'Brien's managerial role until she left the company and was succeeded by Andrea Jennings. *Id.* After O'Brien's demotion, Lucas similarly demoted four other managing partners, all men, to exclusive recruiter positions.

O'Brien filed a complaint with the Texas EEOC on November 15, 2001, charging gender discrimination related to her discharge as a managing partner in May of 2001. O'Brien subsequently filed a civil action under the Texas Commission on Human Rights Act, § 21.051 of the Texas Labor Code. R. at USCA5 28. Lucas removed the case to federal court. R. at USCA5 11. The district court entered summary judgment in favor of Lucas and dismissed O'Brien's claims. Specifically, the district court found that O'Brien failed to establish a prima facie case of gender discrimination and failed to exhaust state remedies in relation to her hostile work environment claim. O'Brien appeals from this judgment.[1] The district court also

---

1. In O'Brien's statement of jurisdiction as elsewhere in her brief, she characterizes her action as one for sex discrimination *and retaliation.* As alleged by Lucas, and confirmed

upon review of the record, neither O'Brien's EEOC filing nor her civil action asserted a retaliation claim. Thus, we do not accept this claim as part of her appeal.

denied, without explanation, Lucas's request for attorneys' fees and costs pursuant to Texas Labor Code § 21.259(a). Lucas cross-appeals from the district court's denial of fees and costs.

On appeal, O'Brien argues that the high turnover rate in her division was commensurate with the industry-wide turnover rate in her field. She further contends that she was dissimilarly treated from her male counterparts, who also had high turnover rates. O'Brien also claims that male managing partners were physically and verbally abusive to staff, often used "lewd" and "profane" language, and told sex stories and sexist jokes without consequence. O'Brien characterizes the work environment at Lucas as sexually harassing, and attributes some of the turnover in her division to that atmosphere. O'Brien maintains that de Martino rebuffed her attempts to address the work environment. O'Brien also alleges that she was sexually harassed by Lucas, contending that he would frequently ask about her age, marital status, and romantic life. She also maintains that Lucas had a "top ten babes list" in the Atlanta Office. O'Brien also contends that she was disparately denied leave to care for her sick mother, while male counterparts were permitted unrestricted amounts of leave for frivolous activities, such as golf outings. O'Brien argues that, despite the harassing atmosphere, she was always a top performer. As to the negative employee comments, O'Brien questions the authenticity of the some of the exit interview documents and characterizes them as a "sham."

### Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards as that court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir.1994).

### Discussion

■ Pursuant to the burden-shifting framework operative in Title VII disparate treatment cases that turn on circumstantial evidence,[2] O'Brien must demonstrate a prima facie case of sex discrimination. If she does so, the burden shifts to Lucas to articulate a legitimate, non-discriminatory basis for its employment decision. If Lucas meets this burden, to prevail on her Title VII claim, O'Brien must demonstrate that Lucas's articulated reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

Although the prima facie burden is extremely low and usually met with minimal effort, O'Brien has failed to meet the burden here. To demonstrate a prima facie case of sex discrimination, O'Brien must show that she: (1) belongs to a protected group; (2) was qualified for the position sought; (3) suffered adverse employment action; and (4) was replaced by someone outside of her protected class. *See Manning v. Chevron Chem. Co., LLC.*, 332 F.3d 874, 881 (5th Cir.2003) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). While there is no serious dispute as to O'Brien's ability to demonstrate the first three prongs of the prima facie test, she is unable to make the fourth showing—that she was replaced by someone outside of her protected class. Much to the contrary, the record evidence demonstrates that O'Brien was replaced by two other women, Cathy de Martino and Andrea Jennings. O'Brien's assertion that she may have been replaced by a man, Jeff

---

2. *See Manning v. Chevron Chem. Co., LLC.*, 332 F.3d 874, 881 (5th Cir.2003) (stating that when a plaintiff attempts to prove race or gender discrimination using circumstantial evidence, the court applies the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)).

Chaponick, is belied by the record evidence, which demonstrates that she was, indeed, replaced by two women.[3] O'Brien's affidavit to the contrary fails to controvert the record evidence because, as even she admits, her assertion is not based on personal knowledge.[4] *See* Fed.R.Civ.P. 56(e) (requiring that "opposing affidavits shall be made on personal knowledge"); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1987) (holding that factual assertions not based on personal knowledge do not qualify as competent summary judgment evidence capable of controverting properly supported facts). Thus, O'Brien fails to create a fact issue on this point.

However, because the prima facie burden favors the complainant, O'Brien's inability to meet the fourth prong does not end our inquiry. *See Williams v. Trader Publ. Co.*, 218 F.3d 481, 485 (5th Cir.2000) (noting that although replacement by a person outside of the plaintiff's protected class is evidence of discriminatory intent, it is not essential to present a prima facie case) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir.1985)). O'Brien may still meet her prima facie burden by demonstrating that the adverse employment action was motivated by her gender. "To establish a prima facie case in this manner, [O'Brien] must show that [male] employees were treated differently under circumstances nearly identical to [hers]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995) (internal citation and marks omitted). To this end, O'Brien maintains, on appeal, that she and similarly situated male counterparts were dissimilarly treated to her detriment. However, O'Brien's argument fails for several reasons. First, her contentions on appeal are inconsistent and otherwise unsupported by her own deposition statements. In deposition, O'Brien averred that she was treated differently from both similarly situated *male and female* counterparts. This admission belies her claim that Lucas's decision to demote her was motivated by gender-based discriminatory animus.

Second, O'Brien has failed to demonstrate that she was treated differently from any of the male managing partners under circumstances nearly identical to hers. Although O'Brien cites similar turnover rates experienced under her and some of her male counterparts, she fails to present summary judgment evidence that any of her male counterparts had a similar, much less nearly identical, documented pattern of employee complaints against them. *See e.g. Williams*, 218 F.3d at 485 (noting that the plaintiff failed to demonstrate identity of circumstance as she was unable to show that her male counterparts had a pattern of disruptive behavior similar to hers); *see also Nieto v. L & H Packing Co.*, 108 F.3d 621, 624, 623 (5th Cir.1997) (finding that a Hispanic complainant was not similarly situated with his Anglo counterparts where the complainant had disregarded instructions not given to his Anglo counterparts and the complain-

---

**3.** In her own affidavit, O'Brien admits that any assumption of her duties by Chaponick were merely a temporary salve until Lucas found a permanent *replacement*. R. at USCA5 281.

**4.** The district court, in fact, found that her affidavit was not competent for this very reason, and excluded it. Although O'Brien takes issue with this and other evidentiary rulings of the district court, she fails to identify specific rulings on appeal, and, thus, waives these issues. *United States v. Avants*, 367 F.3d 433, 442 (5th Cir.2004). Nevertheless, O'Brien's amorphous claims of evidentiary error appear to be without merit. The district court, it seems, properly excluded some of O'Brien's proffered summary judgment evidence for lack of personal knowledge and as impermissible hearsay, pursuant to Rule 56 of the Federal Rules of Civil Procedure and various Federal Rules of Evidence.

ant had a prior disciplinary record, while his Anglo counterparts did not).

Third, O'Brien's attempt to make this showing is further frustrated by the anti-animus presumption that arises when the decisions to hire and fire an employee are made by the same person. The "same actor doctrine" reasons that "[f]rom the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996) (internal marks omitted) (quoting *Proud v. Stone,* 945 F.2d at 796, 797 (4th Cir.1991)). That presumption is especially operative here. Not only was O'Brien hired by de Martino (a woman) and Lucas, but those same actors demoted O'Brien only after a series of attempts, including one-on-one meetings and the hiring of a career coach, to help O'Brien avoid adverse employment action. These circumstances belie O'Brien's rather bare assertion of discriminatory intent by these actors. Moreover, O'Brien's "cat's paw" argument—that de Martino was not part of the demotion decision, but just the front person serving on behalf of Lucas, who was acting with discriminatory motive—is inconsistent with the record evidence and is entirely based upon O'Brien's subjective and wholly conclusory beliefs.

■ Assuming, arguendo, that O'Brien has met her prima facie burden, Lucas has also met its burden—one of production, not persuasion—to articulate a legitimate, nondiscriminatory reason for its employment decision: that O'Brien was demoted because of her ninety percent turnover rate and excessive complaints from employees, despite extensive measures by Lucas to help her combat these problems. *See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (stating that

"[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment' ") (internal citation omitted). Lucas supported this articulation with the production of summary judgment evidence, including affidavits and supporting documentation from former employees who attribute their departures or employment problems to O'Brien's management style. This production is more than sufficient to rebut any prima facie case O'Brien may be able to establish.

Finally, and fatally, O'Brien fails to establish pretext. To establish pretext, O'Brien must "present sufficient evidence to find that the employer's asserted justification is false." *Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 903 (5th Cir. 2000). Neither a tenuous inference, *see Crawford,* 234 F.3d at 903, nor the plaintiff's subjective belief, *see Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 434 (5th Cir.1995), is sufficient to establish pretext.

In furtherance of her pretext argument, O'Brien argues that because pretext is nearly impossible to demonstrate, this Court should evaluate her evidence in a "fluid" manner, akin to the "reasonable suspicion" and "probable cause" case-specific standards operative in criminal law. O'Brien's evidentiary request lacks legal support, and is an obvious attempt to obfuscate the fact that her evidence of pretext is non-existent.

O'Brien "cat's paw" argument, discussed *supra,* is entirely based on her own subjective belief and is advanced without a shred of evidentiary support. Similarly lacking evidentiary support are O'Brien's assertions that male employees engaged in malfeasance, theft, and the like.

O'Brien's additional effort to demonstrate pretext by proffering forms wherein certain employees attest to her good managerial skills is unavailing because the issue, for purposes of pretext analysis, is not

whether O'Brien was, in fact, a good managing partner. *See Deines v. Texas Dep't of Protective and Regulatory Svcs.*, 164 F.3d 277, 281 (5th Cir.1999) (stating that "[w]hether the employer's decision was the correct one, or the fair one, or the best one is not a question within the [fact finder's] province to decide"). Rather, the issue is whether Lucas actually and reasonably believed that O'Brien's ninety percent turnover rate and inability to work well with employees warranted her demotion. *Deines*, 164 F.3d at 281. Because O'Brien has failed to present competent summary judgment evidence that Lucas's asserted justifications for her demotion are false, Lucas's decision to demote O'Brien is supported by the business judgment rule, and we will not further question the validity or correctness of that decision. *See id.*

As to O'Brien's hostile work environment claim, because this claim is beyond the scope of her EEOC claim, wherein O'Brien only alleged Title VII violation for the discharge/demotion that occurred on May 15, 2001, we affirm the district court's dismissal of the claim for failure to exhaust state administrative remedies. *See Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir.2000). Even if exhausted, O'Brien's claim, embodied in all of one paragraph, is devoid of evidentiary support and does not even approach the requisite showing for such a claim. *See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir.2003) (explaining that a complainant must demonstrate, inter alia, that she subjectively perceived sexual harassment at her work environment as severe or pervasive, that her perception is objectively reasonable, and that the harassment affected a term, condition or privilege of her employment).

Finally, we address Lucas's cross-appeal for attorneys' fees and costs. Reviewing the district court's denial for abuse of discretion, *see Pope v. MCI Telecomms.*

*Corp.*, 937 F.2d 258, 266–67 (5th Cir.1991), we reverse the district court's judgment and remand for an assessment of attorneys' fees and costs. Although the abuse of discretion standard effectively provides for deferential review, deference, while it may still be accorded, is not due where, as here, the district court has failed to provide written reasons for its determination. Moreover, given the degree to which O'Brien's claim lacks merit in general, and the vacuousness of some of her claims in specific, we find that the district court abused its discretion in failing to permit remuneration for Lucas's labor in defending itself against a suit such as the instant. *See Pope v. MCI Telecommunications Corp.*, 937 F.2d 258, 267–68 (5th Cir.1991).

For these reasons, we **AFFIRM** the district court's summary judgment grant in favor of Lucas, **REVERSE** the district court's denial of attorneys' fees and costs to Lucas, and **REMAND** for an assessment of costs pursuant to Tex. Lab.Code § 21.259(a).