Jeffrey T. **HUBER**, Plaintiff,

v.

**TEXAS WOMAN'S UNIVERSITY,**
**Defendant.**

**Civil Action No. H–06–303.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 17, 2007.

---

David T. Lopez, David T. Lopez & Associates, Houston, TX, for Plaintiff.

Robert Francis Johnson, III, Office of the Attorney General, Austin, TX, for Defendant.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Defendant Texas Woman's University's ("TWU") Mo-

tion for Summary Judgment (Instrument No. 29). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## BACKGROUND

Plaintiff Jeffrey T. Huber ("Huber") brings this action against his employer, Defendant Texas Woman's University ("TWU"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Huber, a tenured professor in TWU's School of Library and Information Sciences ("SLIS"), works jointly at TWU's Houston, Texas branch and the Houston Academy of Medicine–Texas Medical Center Library ("HAM–TMC").[1] He alleges he was treated differently by female supervisors, including his female department head, who were upset because he made more money than they did. He asserts because of his gender, his supervisor discriminated against him by recommending that the Houston program Huber developed be relocated to Denton. Additionally, he alleges he has been denied a travel allowance to Denton, which has resulted in his exclusion from faculty meetings, and he has been forced to teach platform courses despite being hired to focus on teaching and developing courses in health sciences, which is his area of specialization.[2] Huber avers if he were a woman, none of these actions would have occurred.

Huber filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued him a right to sue letter. He timely filed this suit on January 30, 2006.[3] On July 2, 2007, TWU moved for summary judgment, arguing Huber has presented no evidence he suffered either an adverse employment decision actionable under Title VII or any discrimination based on his gender. In response, Huber asserts he has presented sufficient evidence to create a genuine issue of material fact that must be resolved by a jury.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

1. TWU is a state university with branches in Denton, Dallas, and Houston, Texas. In 2000, TWU relocated Huber to Houston to launch its masters program. As part of this relocation, Huber received approval for his second appointment at HAM–TIC. Huber is the only SLIS faculty member in Houston.

2. A platform course is one of four required courses that students must complete to earn a masters in library science. Huber avers teaching platform courses takes away from the time he can devote to his specialization.

3. Subsequently, on June 30, 2006, the Court determined that Huber's state discrimination claim was barred by sovereign immunity. In a separate action in a Texas state court, Huber brought suit against three female TWU officials, including his supervisor, SLIS Director Ling Hwey Jeng ("Jeng"). The 367th District Court of Denton County, Texas, granted the defendants' motion for summary judgment.

*Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir.1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 713 (5th Cir.1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007) (observing that "[s]ummary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party"). It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman,* 954 F.2d 1125, 1137 n. 30 (5th Cir. 1992).

### LAW AND ANALYSIS

Huber complains of discrimination based on his gender. Under Title VII, an employer is prohibited from discriminating against any individual because of his or her sex. 42 U.S.C. § 2000e–2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir.2004) (citations omitted). Huber's claim is governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir.2001). Under this framework, Huber must first demonstrate a prima facie case of discrimination by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. If he succeeds, the burden shifts to TWU to establish a legitimate, non-discriminatory reason for its employment decision. *Id.* at 253, 101 S.Ct. 1089. If TWU does so, the burden shifts back to Huber to demonstrate that TWU's reason was merely a pretext for intentional discrimination.[4] *Id.* at 253, 101 S.Ct. 1089; *Evans v. City of Houston,* 246 F.3d 344, 350 (5th Cir.2001). Stated another way, Huber must show that gender discrimination more likely motivated TWU's decisions or that its reasons are not credible. *Laurence v. Chevron U.S.A., Inc.,* 885 F.2d 280, 284 (5th Cir.1989).

▮ To demonstrate a prima facie case of gender discrimination, Huber must show he: (1) belongs to a protected group; (2) was qualified for his position; (3) was discharged or suffered some adverse employment action; and (4) he was either replaced by someone outside of his protected class or treated less favorably than similarly situated employees outside the protected class. *See Alvarado v. Tex.*

---

4. The Court notes the burden of persuasion in a Title VII discrimination case remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

*Rangers,* 492 F.3d 605, 611 (5th Cir.2007); *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir.2007); *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir.2005); *see also O'Brien v. Lucas Assocs. Personnel, Inc.,* 127 Fed.Appx. 702, 705–06 (5th Cir.2005) (finding plaintiff may show an adverse employment action was motivated by her gender via evidence that an employer treated employees outside the protected class more favorably). To establish that he was treated less favorably than similarly situated employees outside the protected class, Huber must "show that [female] employees were treated differently under circumstances 'nearly identical' to his." *Mayberry v. Vought Aircraft,* 55 F.3d 1086, 1090 (5th Cir.1995) (citations omitted); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir.2001).

TWU apparently does not challenge Huber's status in a protected group or his qualifications for the job. Rather, TWU appears to focus on Huber's ability to establish the third and fourth elements of his prima facie claim.[5] Thus, the Court will analyze whether Huber can show he suffered an adverse employment action and whether similarly situated female faculty members were treated more favorably than he was. TWU argues summary judgment is proper because Huber has no evidence that he suffered an adverse employment action because of his gender.[6] More specifically, TWU posits that requiring Huber to teach a platform course, recommending relocating Huber's program to

Denton, and denying him a travel allowance do not constitute adverse employment actions protected by Title VII's antidiscrimination provisions. In response, Huber asserts TWU relies on an outdated and more restrictive definition of adverse employment action than what actually is protected by Title VII. He points the Court to the United States Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co.,* —— U.S. ——, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006) (finding that Title VII's anti-retaliation provision encompasses more than "workplace related or employment-related retaliatory acts and harm").

■ In *Burlington,* the Supreme Court compared the language in Title VII's substantive and anti-retaliation provisions, observing that the two are not coterminous. *Id.* Rather, Title VII's substantive provision, which is at issue in Huber's case, "explicitly limits the scope of [adverse employment actions] to actions that affect employment or alter the conditions of the workplace." *Id.* at 2411–12. Thus, *Burlington* did not alter well-settled law in the United States Court of Appeals for the Fifth Circuit requiring that Title VII discrimination plaintiffs establish they suffered an "ultimate employment decision." *McCoy,* 492 F.3d at 559–60. In the Fifth Circuit, adverse employment actions include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* at 559 (affirming the trial court's determination that an employer's placement of plaintiff

---

5. In its summary judgment motion, TWU states that Huber fails to establish the third element of racial animus and that he has no evidence of the fourth element of similarly situated individuals who were treated differently. The Court presumes for purposes of this motion that TWU meant Huber has no evidence that he suffered an adverse action because of his gender.

6. Because Huber has the burden of proof at trial, TWU "can meet its summary judgment obligation by pointing the court to the absence of evidence to support [his] claims." *King v. Enter. Leasing Co. of DFW,* Civ. A. No. 3:05–CV–0026–D, 2007 WL 2005541, at *2 (N.D.Tex. July 11, 2007) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

on paid leave did not constitute an adverse employment action that may be remedied by Title VII's discrimination provision).

In the case at bar, Huber has not been terminated, demoted, reprimanded or refused a promotion. In fact, according to his testimony, Huber has been promoted from assistant professor to associate professor to his current position as a full professor during his time with the university, and he gained tenure in less time than his colleagues. Additionally, his pay has steadily increased during his time at TWU; he currently is the second most highly compensated professor in the SLIS department.[7] According to Huber, his status as one of the mostly highly paid SLIS faculty members made him a target of female supervisors.

■ Aside from his promotions and pay increases, Huber contends he was subjected to adverse employment decisions because of his gender. One of these adverse actions, according to Huber, was Jeng's decision to assign him a platform course. With respect to his claim relative to this teaching assignment, the Court notes that several years ago, the SLIS faculty, including Huber, voted in favor of a mandate that platform courses be taught by full-time faculty.[8] The Court concludes TWU's decision to have Huber teach platform courses is not an ultimate employment decision protected by Title VII's anti-discrimination provisions. *McCoy,*

492 F.3d at 558–59 (discussing what constitutes an adverse employment action); *see also Dorsett v. Bd. of Trs. for State Colls. and Univs.,* 940 F.2d 121, 123 (5th Cir. 1991) ("In public schools and universities across this nation, interfaculty disputes arise daily over *teaching assignments,* room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.") (emphasis added).

■ Assuming arguendo this teaching assignment constituted an adverse employment action, Huber cannot demonstrate that similarly situated female faculty members were treated more favorably than he was. The evidence before the Court demonstrates that of the eleven full-time faculty members at SLIS during the 2004–2005 academic year, eight were qualified to teach platform courses. By the end of that year, all eight faculty, which included two men and six women, had taught at least one section of a platform course. Thus, Huber cannot show that even if the other full-time female faculty members were in circumstances "nearly identical" to his own, they were treated more favorably. *See Mayberry,* 55 F.3d at 1090; *see also Okoye,* 245 F.3d at 514. Rather, the evidence before the Court demonstrates that the policy was applied uniformly to all qualified SLIS professors.[9] There is no

7. In a July 2007 affidavit, Jeng states she reviewed salary figures for four faculty members who have been with SLIS since 2003. Huber's salary is second only to another male SLIS faculty member.

8. Huber testified that he was hired for the specific purpose of developing the health sciences area of SLIS's curriculum and program. He opines that focusing on that task "is the best use of his time" rather than teaching a generalized platform course. According to Huber's testimony, he taught platform

courses during the 2005 spring semester and the 2006 summer semester; however, a majority of the courses he teaches relate to his specialization.

9. In a four-to-one vote, a faculty grievance committee upheld Jeng's decision to have Huber teach platform courses. Now, Huber ostensibly criticizes the grievance process as being unfair because an all-woman committee heard his complaint. However, the committee was appointed by the faculty's speaker for the senate, who at the time was a man, and

evidence this teaching assignment was based upon Huber's gender. Thus, Huber cannot establish a prima facie case of gender discrimination based upon having to teach platform courses. *See Turner,* 476 F.3d at 346 (noting that an African American plaintiff had no evidence suggesting that the defendant employer had applied policies differently to non-minority employees).

■ Huber also asserts that the proposed relocation of his Houston program to Denton in 2004 and the denial of an allowance to travel to faculty meetings in Denton have caused him compensation losses covered by Title VII.[10] He avers the lingering possibility that the program could be transferred to Denton has prohibited him from applying for grants because he cannot commit to projects in Houston unless he is able to guarantee their completion there. The Court is not persuaded that a transfer or relocation that has not yet occurred constitutes an adverse employment action. It also is not convinced that the denial of a discretionary travel allowance constitutes a loss of compensation that may be remedied by Title VII's substantive provisions. Huber cannot show that women faculty in virtually identical circumstances were treated more favorably; indeed, as he admits, there are no other similarly-situated faculty members who face the possibility of relocation to Denton. Moreover, he presents no evidence that any other faculty member based outside Denton receives travel funds.

■ However, Huber does aver that in June 2004, three months before the possibility of Huber's relocation was discussed at a faculty meeting and at some point before Jeng restricted his travel allowance, Jeng expressed her dissatisfaction with Huber's total compensation being higher than that of other faculty members, including her own. Additionally, Huber states Jeng "considered unseemly that at Texas Women's University a male faculty member be compensated substantially more than female faculty."[11] Because the threshold for a prima facie case is low, the Court will presume Huber has presented a prima facie case that gender discrimination has affected his compensation. *See O'Brien,* 127 Fed.Appx. at 705 (noting that the prima facie burden in Title VII cases favors plaintiffs); *see also McCoy,* 492 F.3d at 559–60 (recognizing that a change in compensation may be a type of ultimate employment decision covered by Title VII). Thus, it looks to the reasons that TWU proffers in explanation of Huber's possible relocation from Houston to Denton and the termination of a travel allowance.

TWU avers the possibility of moving Huber to Denton arose in early 2004 when SLIS officials were looking for ways to decrease the program's operating expenses. A January 2004 memorandum written by Jeng's predecessor, Lynn Westbrook ("Westbrook"), contrasts the costs with the benefits of keeping the SLIS Houston office open, and witness affidavits support TWU's contention that in 2004,

---

Huber did not raise gender discrimination in his grievance.

**10.** Huber contends that TWU's decision has forced him to attend faculty meetings by telephone, which inhibits his ability to effectively communicate and affects his credibility with his peers.

**11.** Jeng denies making these statements. Despite these alleged statements, however, the parties agree that Huber's salary has risen during his tenure with TWU. As previously noted, there are several references in the record to his being one of the most highly compensated SLIS faculty members.

SLIS was attempting to save money.[12] The Court finds that TWU presents a legitimate, non-discriminatory reason—budgetary concerns—for considering moving Huber back to Denton. *See Wingrove v. Nobel Ins. Co.,* No. Civ. A. 3:97–CV–1885–P, 1998 WL 531882, at *4 (N.D.Tex. Aug. 17, 1998) (finding that the defendant employer presented a legitimate reason by showing its employment decisions were made for economic reasons); *see also generally EEOC v. Tex. Instruments Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996) (recognizing that a reduction in force to save money is a legitimate, non-discriminatory reason for terminating an employee); *Tucker v. SAS Institute, Inc.,* 462 F.Supp.2d 715, 727 (N.D.Tex.2006) (same).

■ With respect to the travel allowance, Jeng avers Huber's travel to faculty meetings had been improperly funded through an account that was only supposed to be utilized for student instruction. Thus, she states she changed this practice when she became SLIS director. According to Jeng, no other SLIS faculty member receives travel funding, including Westbrook, who was based in Austin, Texas at the time she served as director of SLIS. Additionally, she states most TWU faculty located outside Denton attend faculty meetings like Huber does, via teleconferencing. The Court concludes TWU has sufficiently demonstrated a legitimate, non-discriminatory reason for restricting Huber's travel funds. *See generally Wingrove,* 1998 WL 531882, at *4.

Thus, the burden shifts to Huber to demonstrate that these reasons are a pretext for intentional discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Though counsel for Huber vehemently opposes TWU's summary judgment motion,

he does not direct the Court to any specific evidence of pretext or argue any facts that could lead a reasonable jury to conclude TWU discriminated against Huber either by considering relocating him to Denton or limiting travel funds for faculty meetings. Though it is not the Court's job to search the record for evidence that may raise a fact issue, the Court notes in its review of the record, it could not find any evidence that would help Huber survive TWU's motion for summary judgment. *See Turner,* 476 F.3d at 343 (observing that the party opposing a motion for summary judgment cannot rely on conclusory allegations or unsubstantiated assertions); *see also generally Gonzalez v. Sw. Bell Yellow Pages,* Civ. A. No. 3:05–CV–383–L, 2007 WL 900768, at *8 (N.D.Tex. Mar. 26, 2007) (noting that after carefully combing the record, the court could not locate evidentiary support for plaintiff's contentions).

Additionally, the Court declines to disregard TWU's explanations in the absence of contravening evidence that these were not the real reasons behind its actions. *See Fabre v. Am. Airlines,* Civ. A. No. 05–1647, 2007 WL 97067, at *3 (E.D.La. Jan. 9, 2007) (citing *Guthrie v. Tifco Indus.,* 941 F.2d 374, 377 (5th Cir.1991)). The Court determines Huber has not met his burden of showing either that TWU's reasons are a pretext for gender discrimination or that though its explanations are valid, gender factored into those decisions. *See Turner,* 476 F.3d at 346–47; *Fabre,* 2007 WL 97067, at *3; *see also Guerra v. United Parcel Serv., Inc.,* 250 F.3d 739, 2001 WL 274296, at *4 (5th Cir.2001) (finding no evidence of pretext). Thus, summary judgment is proper with respect to Huber's claims that TWU discriminated

---

12. The evidence indicates that Westbrook—not Jeng—initiated the discussion about possibly relocating Huber to Denton. Jeng avers she implemented other ways to keep SLIS costs down in 2004, so the discussion about moving Huber to Denton ended.

against him based on his gender. Based on the foregoing, the Court

ORDERS that Defendant Texas Woman's University's Motion for Summary Judgment (Instrument No. 29) should be GRANTED.

### FINAL JUDGMENT

As the Court has granted Defendant Texas Woman's University's Motion for Summary Judgment the Court hereby

ORDERS that final judgment be entered. Plaintiff Jeffrey T. Huber's claims against Defendant are DISMISSED. Plaintiff shall take nothing from Defendant.

This is a FINAL JUDGMENT.