# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 22, 2011

No. 10-20869
Summary Calendar

Lyle W. Cayce
Clerk

DESSIE F. CHERRY,

Plaintiff - Appellant

v.

CCA PROPERTIES OF AMERICA, LIMITED LIABILITY CORPORATION,
doing business as Correction Corporation of America,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2244

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Dessie Cherry commenced this lawsuit against her former employer, CCA Properties of America, L.L.C., claiming that she was terminated because of her race, sex, and age, and in retaliation for making complaints about discriminatory treatment she received, and that she had been subjected to a hostile work environment while employed. Cherry appeals the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20869

district court's order granting CCA's motion for summary judgment. We AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

Dessie Cherry is a 60 year-old African-American woman. Prior to her termination, Cherry worked for CCA Properties of America, L.L.C. ("CCA"), as a warden at its Liberty County Jail facility ("LCJ"). CCA's operation of LCJ was governed by a two-year contract. During Cherry's tenure at LCJ, the LCJ contract was awarded to one of CCA's competitors, and CCA's operation of LCJ ended on December 31, 2006. While CCA was winding down its operations at LCJ, Cherry was asked by her supervisors to submit applications for warden and assistant warden positions at other CCA facilities. Cherry applied for several positions, but was ultimately terminated by CCA on February 9, 2007.

After receiving a right-to-sue letter from the EEOC, Cherry commenced this lawsuit against CCA. In her complaint, Cherry made the following claims: (1) CCA discriminated against her on the basis of her race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621(b); (2) CCA retaliated against her for engaging in "prior protected EEOC activity"; and (3) Cherry had been subjected to a hostile work environment while employed at CCA. CCA moved for summary judgment on all of Cherry's claims, which the district court granted. The district court first held that, based on the date of her EEOC questionnaire, Cherry's allegations of discriminatory conduct occurring prior to March 5, 2006, were time-barred.[1] Turning to Cherry's remaining claims, the district court held that CCA had articulated a legitimate, non-

---

[1] Cherry alludes to, but does not in any way challenge, this holding on appeal. Therefore, any error in the district court's holding on this point is waived, and we do not consider any claims concerning discrimination alleged to have occurred prior to March 6, 2006. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that issues not briefed on appeal are waived.").

No. 10-20869

discriminatory reason for her termination that Cherry had not discredited. The district court also concluded that the conduct Cherry alleged as constituting a hostile work environment did not "appear[] to be discriminatory, let alone severe or pervasive enough to create an objectively hostile or abusive work environment." Accordingly, the district court granted CCA's motion for summary judgment on all of Cherry's claims. Cherry appealed.

## II. STANDARD OF REVIEW

This court reviews the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III. DISCUSSION

### A.    Cherry's Race, Sex, and Age Discrimination Claims

Cherry's discrimination claims are based on circumstantial evidence of CCA's discrimination against her. Under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Cherry bears the initial burden of creating a presumption of discrimination by establishing a *prima facie* case of discrimination on the basis of her race, sex, or age. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Once Cherry has established a *prima facie* case of discrimination, the burden shifts to CCA to "produce a legitimate, non discriminatory reason for her termination," which "causes the presumption of discrimination to dissipate." *Id.* If CCA articulates a legitimate, non-discriminatory reason for Cherry's termination, Cherry is afforded "an opportunity to rebut [CCA's] purported explanation, to show that the reason given is merely pretextual." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Cherry may prove pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or

3

unworthy of credence." *Laxton*, 333 F.3d at 578 (citation and internal quotation marks omitted).

Cherry alleged that CCA discriminated against her on the basis of her race, sex, and age by requiring her to apply for other positions within CCA after CCA lost the LCJ contract and then rejecting her for those positions. To establish a *prima facie* case of discrimination, Cherry must prove that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999) (sex discrimination claim); *see also Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (applying same standard for age discrimination claim); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (applying same standard for race/national origin discrimination claim).

There does not appear to be any dispute between the parties that Cherry has made a *prima facie* showing that she was a member of a protected class, that she was qualified for the position of warden, and that she suffered an adverse employment action when she was terminated. Cherry's *prima facie* case stumbles, however, when she attempts to prove that other, similarly situated CCA employees were treated more favorably. In her briefing before this court, Cherry claims that she was the "only African American female Warden over the age of 56 years old who was not rehired by CCA after it lost the LCJ contract." However, she has submitted no evidence to substantiate this claim.

As further evidence that similarly situated CCA employees were treated more favorably, Cherry points to Robert Lacy, a fellow warden who Cherry claims successfully applied for a transfer from one CCA facility to another. Like Cherry, however, Lacy is an African-American, so he is not a proper comparator for demonstrating that her termination was the product of racial discrimination

by CCA. *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 484 (5th Cir. 2001) (to prove disparate treatment, "plaintiff may use circumstantial evidence that she has been treated differently than similarly situated *non-members of the protected class*" (emphasis added)). For this same reason, Cherry's failure to provide any evidence of Lacy's age precludes using him as a comparator to prove that Cherry's termination was based on her age.

Moreover, Lacy's ability to transfer from one CCA facility to another is not evidence that Cherry's termination for failure to secure a transfer was motivated by discriminatory animus because those employment decisions were not made under sufficiently similar circumstances. *See, e.g., Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) ("[W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances." (citation and internal quotation marks omitted)). Lacy, unlike Cherry, was not employed at a facility with an expiring contract when he transferred, but achieved his transfer by swapping facilities with another CCA warden. Obviously, Cherry could not swap facilities with another warden because CCA had lost the LCJ contract. Therefore, Lacy is not a proper source of comparison for CCA's decision to terminate Cherry. Because Cherry has not proven every element of a *prima facie* claim for race, sex, and age discrimination, the district court properly granted summary judgment on those claims.

Cherry has also failed to rebut CCA's proffered legitimate, non-discriminatory reason for her termination. There is no dispute that the CCA positions at LCJ were lost when CCA's contract for that facility expired. This court has previously recognized that a reduction in force is a legitimate, non-discriminatory reason for termination. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007) (reorganization of department, which eliminated plaintiff's position, was a legitimate, non-discriminatory reason for

termination); *see also Stingley v. Den-Mar, Inc.*, 347 F. App'x 14, 20 (5th Cir. 2009) (reduction in staff after the loss of a lucrative contract is a legitimate, non-discriminatory reason for termination). CCA avers that Cherry was terminated as a result of the loss of the LCJ contract because she would not accept any available, out-of-state warden or assistant warden positions with CCA.

Cherry contends that CCA's stated reason for her termination is pretextual because she applied—but was ultimately not considered—for several out-of-state positions with CCA. As evidence of her intent, Cherry points to her applications to out-of-state warden positions in Prairie, Minnesota and Cal City, California,[2] as well as several out-of-state assistant warden positions, and her accompanying email stating that she wished to be considered for these positions to remain with CCA.

However, a full view of the summary judgment record demonstrates that there is no genuine dispute over Cherry's willingness to accept an out-of-state position with CCA. Her supervisor at the LCJ facility and CCA's staffing manager both testified that, during the period of vacancy for the positions for which Cherry applied, she unequivocally stated that she was not interested in positions with CCA outside of Texas.[3] Cherry's supervisor also testified that, even after applying to the out-of-state positions, she "continued to refuse to accept or to move beyond Texas." As her supervisor and the staffing manager testified, Cheney was ultimately not considered for these positions because of her

---

[2] The Cal City position had been filled prior to Cherry's application.

[3] After her termination, Cherry applied to two other positions within CCA for which she was rejected: a facilities management position, which required seven years of experience as a corporate real estate and facilities manager, and a position as warden at the T. Don Hutto Residential Center, which required fluency in Spanish. On appeal, Cherry does not specifically discuss the rejection of either application as a basis for concluding that CCA discriminated against her. In any event, Cherry has not demonstrated that she was qualified for either position.

continuing intractability regarding out-of-state positions.  Cherry does not directly dispute this testimony.

Moreover, both Cherry and her supervisor testified that she was offered out-of-state positions with CCA as assistant warden, but did not accept those positions.  To further underscore this point, Cherry also testified that it was her understanding that she could have remained employed with CCA if she agreed to move out of state and accept an assistant warden position.  Accordingly, Cherry has failed to create a genuine dispute over whether CCA's reason for her termination was pretextual, and the district court properly granted summary judgment in favor of CCA on her discrimination claims.

## B.    Cherry's Retaliation Claim

Cherry next argues that the district court improperly dismissed her retaliation claim.  This court applies the *McDonnell Douglas* burden-shifting framework to retaliation claims.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  To establish a *prima facie* retaliation claim, Cherry must prove that:  (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.  *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011).

As evidence of engaging in protected activity, Cherry points to the fact that she was terminated within two months of completing an EEOC questionnaire. *See* 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").  What Cherry has failed to establish, however, is that there was any causal connection between her completion of the EEOC questionnaire and her termination, because there is no evidence from which to conclude CCA was aware of her complaint.  *See Manning v. Chevron Chem. Co.*, 332 F.3d 874,

883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."). The fact that an employee is terminated after engaging in protected activity, alone, is typically not sufficient to create a genuine issue of material fact on the issue of retaliation. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007).

Assuming, however, that Cherry has made a *prima facie* case of retaliation, her claim still fails. As discussed above, Cherry has not refuted CCA's legitimate, non-retaliatory reason for her termination: that she was terminated because CCA lost the LCJ contract and she was not willing to relocate out of state. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486–87 (5th Cir. 2008). Therefore, the district court properly granted CCA's motion for summary judgment on Cherry's retaliation claim.

## C.    Cherry's Hostile Work Environment Claim

Cherry next claims that, while employed at CCA, she was subjected to a hostile work environment on account of the fact that she is an "African American female over the age of 56 years." As evidence of the hostility she faced based on her status while an employee at CCA, she points to the following acts: (1) she was required to submit daily reports to her supervisor beginning in August 2006; (2) she, unlike Lacy, was not assisted in her completion of her applications for warden and assistant warden positions; (3) she did not receive annual appraisals for 2005 and 2006; and (4) CCA required her to apply for warden and assistant warden positions after the closure of LCJ.

This claim fails. First and foremost, Cherry has presented no competent summary judgment evidence from which this court, or the district court, could conclude that any of the complained-of actions were taken on account of her membership in a protected class. *See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (requiring plaintiff to prove that "the harassment complained of

was based on race"); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999) (requiring plaintiff to prove "that the harassment was based on sex"); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees *because of* their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." (emphasis added)). Instead, Cherry broadly claims that her pleadings and the record before the district court have sufficiently proven her hostile work environment claim, which is insufficient to create a genuine issue of material fact regarding her claim. *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (a non-movant cannot defeat summary judgment by presenting "conclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation").

Moreover, beyond referring to the conduct she considers hostile, Cherry has not argued how the complained-of acts were "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *See Harris*, 510 U.S. at 21. Thus, Cherry's hostile work environment claim was properly dismissed at summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.