Dexter C. RHINES, Plaintiff–Appellee,

v.

SALINAS CONSTRUCTION TECH-NOLOGIES, LIMITED, Defen-dant–Appellant.

No. 13–40473.

United States Court of Appeals, Fifth Circuit.

June 25, 2014.

Stephen Jeffrey Chapman, Chapman Law Firm, Corpus Christi, TX, for Plaintiff–Appellee.

Kala S. Dumont, Gaul & Dumont, San Antonio, TX, for Defendant–Appellant.

Before DAVIS, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM: *

Salinas Construction Technologies, Limited ("Salinas Construction") appeals the district court's denial of its motion for judgment as a matter of law and motion for new trial following an adverse jury verdict. The jury found that Dexter Rhines ("Rhines") was subject to a hostile work environment and awarded damages. After drawing all reasonable inferences in the light most favorable to the verdict, as we must, we AFFIRM.

I.

When reviewing a challenge to a jury verdict, "we must draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that we might regard as more reasonable." *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir.2013). "[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir.2012) (quoting *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir.1997)).

The evidence presented at trial showed the following. Rhines, an African–American, was employed as a formsetter and finisher by Salinas Construction. From the time he was hired, and for over a year afterward, Rhines reported that he was called a number of racial epithets and was the subject of racial jokes. His co-worker, and eventually his project manager, Baldemar Gelista, called him "güero." [1] Though Rhines told Gelista the term made him uncomfortable and requested that he not be called "güero," Gelista responded, "[W]ell, now, boy, you're my Guero." Other co-workers also testified that they frequently called Rhines "güero."

Most of the racial epithets and jokes that are the basis for Rhines's complaint came from Rhines's direct supervisor, David Garcia. Garcia called Rhines "güero," "mayate," [2] and "ni – – er." In one

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. Rhines testified on direct examination at trial that "güero" meant "white guy."

2. In his opening statement, counsel for Rhines defined "mayate" as "the Spanish word for the 'N' word." At oral argument, Salinas Construction, when questioned, did not disagree that "mayate" is considered the Spanish word for the "N" word. During direct examination at trial, Rhines was asked about his understanding of the word "mayate," meant, and he responded, "[I]t's a slang. 'Mayate' to me is like monkey...." In this circuit, we have previously acknowledged

particular instance, Garcia made a racial joke about how to build a "ni – – er" trap, a joke that was at Rhines's expense and told in front of other employees. Another time, Rhines asked Garcia a work-related question, to which Garcia responded, "Get the f – – k away from me, I don't want no mayate around while I'm eating." In addition, Rhines was singled out for work based on his status as the only African–American on the job. Garcia required Rhines to unload a truck of bricks by himself. Though other employees wanted to help Rhines unload the truck, Garcia said, "Let the mayate unload the bricks by himself."

At first, Rhines tried to ignore the racial epithets and differing treatment, but when they persisted, he called his overseeing supervisor, Jose Davila, to report the situation and to request Davila's help. Davila said he would look into the situation, but Rhines never spoke to Davila about the complaint again. When no action was taken after the phone call to Davila, Rhines wrote a letter to Salinas Construction. The letter noted that Rhines was called racial epithets by his supervisors and co-workers and that Garcia had made a racial joke about how to build a "ni – – er" trap at Rhines's expense. The letter also detailed complaints that Rhines performed tasks that were not part of his job description and that other similarly situated non–African–Americans did not have to perform, such as unloading bricks alone.

Salinas Construction did not respond to his letter. Instead, Garcia told him not to write or call the corporate office again. The racial epithets stopped for a couple weeks after the letter was sent, mostly because Rhines was working apart from his usual group. After this short period, the racial epithets started again, but this time, the name-calling worsened. According to Rhines, if not for his family, he "probably would have lost [his] head" in response to Garcia's treatment. Rhines did not file any subsequent complaints with Salinas Construction.

Following his complaint, Rhines asked Garcia if he could take time off to be with his dying brother. Rhines took time off, apparently in spite of not receiving permission from Garcia. Rhines was fired a few days after returning from his brother's funeral.

Rhines filed this lawsuit, asserting an employment discrimination claim, alleging that Salinas Construction had required Rhines to perform significantly more work than similarly situated non-African-Americans. Rhines also asserted a retaliation claim, alleging that he was terminated from his job for complaining about discrimination. In a third claim, Rhines asserted that he was subject to a hostile work environment. The jury found in favor of Salinas Construction on Rhines's employment discrimination and retaliation claims. The jury found in Rhines's favor on the hostile work environment claim. The jury awarded Rhines $10,000 in compensatory damages, $2,200 in back pay, and $50,000 in punitive damages. Upon entering final judgment, the district court reduced the punitive damages award to $40,000 in order to comply with the statutory maximum.[3] 42 U.S.C. § 1981a(b)(3)(A) (capping compensatory damages, including punitive damages, to $50,000 for an employer with 15–100 employees). The district court also awarded

that "mayate" "is Spanish slang for dark skinned people and means dung beatle." *Spears v. Patterson UTI Drilling Co.,* 337 Fed. Appx. 416, 420 n. 3 (5th Cir.2009).

3. The parties agreed that the $2,200 back pay award was not appropriate, so it was not included in the final judgment.

Rhines $36,150 in attorney's fees, court costs, and interest.

## II.

Salinas Construction raises five issues on appeal: (1) there was insufficient evidence to establish a hostile work environment; (2) the evidence establishes Salinas Construction's *Ellerth/Faragher* affirmative defense; (3) there was insufficient evidence to support an award of compensatory damages; (4) there was insufficient evidence to support an award of punitive damages; and (5) the award of attorney's fees was not proper. We discuss each of these issues in turn.

## A.

Salinas Construction argues that the district court erred in denying its motion for judgment as a matter of law, and in the alternative, motion for new trial, because Rhines's evidence did not establish a hostile work environment. The " 'standard of review with respect to a jury verdict is especially deferential.' " *Boh Bros.*, 731 F.3d at 451 (citations omitted). We review the denial of the motion for judgment as a matter of law *de novo*, and apply the same legal standard as the district court. *Id.* "Under that standard, a litigant cannot obtain judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id.* We will only reverse a denial of a motion for judgment as a matter of law if the jury's factual findings are not supported by substantial evidence. *Id.* at 452.

The elements of a hostile work environment based on a supervisor's conduct are: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that

the harassment was based on [a protected characteristic]; and (4) that the harassment affected a term, condition, or privilege' of employment." *Id.* at 453 (internal quotation marks and citation omitted). Salinas Construction does not dispute that Rhines established the first element of his claim, that he belongs to a protected class. However, Salinas Construction maintains that the remaining elements were not satisfied. We disagree. There was sufficient evidence in the record to satisfy the second and third elements: Rhines was subject to harassment that was based on his race and he made it known that he was uncomfortable with the harassment. Rhines testified that Garcia repeatedly used racial epithets to refer to him, such as "güero," "mayate," and "ni – – er," even after he requested not to be called those names. Once, Garcia told Rhines: "Get the f – – k away from me, I don't want no mayate around while I'm eating." In addition, there was evidence that Rhines was given extra duties because of his race. For example, on one occasion, he was required to unload a truck by himself while his coworkers looked on. His boss told him to do the job and stated to his coworkers, "Let the mayate unload the bricks by himself."

There was also sufficient evidence to support the fourth and final factor of Rhines's discrimination claim, that the harassing conduct affected a term, condition, or privilege of employment. In addition to his supervisor's name-calling and harassment, his coworkers testified that they too frequently called him "güero." This racial harassment occurred for over a year, despite Rhines's complaint to management. On this record, there is sufficient evidence for the jury to have concluded that Salinas Construction's conduct was sufficiently severe and pervasive to have constituted a hostile work environment. *See EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399

(5th Cir.2007); *see also Boh Bros.*, 731 F.3d at 461.

### B.

Salinas Construction argues that the district court erred in denying its motion for judgment as a matter of law, and in the alternative, motion for new trial on its *Ellerth/Faragher* affirmative defense. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Under this defense, an employer will not be vicariously liable for harassment by a supervisor if the employer can show: "(a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. "The employer bears the burden to prove *both* elements by a preponderance of the evidence." *Boh Bros.*, 731 F.3d at 462 (citing *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 483 (5th Cir.2008)).

■ We have stated that "[a]n employer can satisfy the first prong of the *Ellerth /Faragher* defense by implementing suitable institutional policies and educational programs regarding harassment." *Id.* at 462–63. Although Salinas Construction argues on appeal that it had an Equal Employment Opportunity policy, the jury could have believed the testimony at trial that the policy was not followed. At trial, the jury heard evidence that in response to the EEOC's request for information, Salinas Construction produced affidavits stating that Rhines never complained about discrimination. The jury heard and saw evidence and testimony demonstrating that this was false. Rhines testified that he had complained by phone call to Davila and had written a detailed complaint letter to the company. The jury also heard Gelista testify that he was in a hurry when he signed an admittedly false affidavit stating he never used the terms "güero" or "wuedo" [4] in regards to Rhines.

Salinas Construction also asserts that it took reasonable care when it investigated Rhines's complaints that he was called "güero," that he was not being paid for work performed, and that he was being required to work more than others. Salinas Construction contends that the investigation was successful because after the investigation, Rhines did not complain about these situations again. However, Rhines testified that he never heard anything about the investigation and that if there was an investigation, it was not performed in good faith. To show that the investigation was not performed in good faith, Rhines points to testimony by the owner of Salinas Construction, Gilbert Salinas, who testified that Jose Davila was in charge of conducting the investigation. Davila, the person who supposedly conducted the investigation, testified that he "had no involvement in the investigation." Furthermore, following Rhines's complaint, Rhines testified that Salinas Construction's treatment of him "got worse than it had been." On this record, the jury could have reasonably concluded that Salinas Construction failed to establish the *Ellerth/Faragher* defense.

### C.

Salinas Construction argues that there is no evidence to support the jury's award

---

4. Gelista testified at trial that "wuedo" meant "light-skinned."

of $10,000 in compensatory damages, or in the alternative, the damages are excessive. Specifically, Salinas Construction argues that Rhines did not present evidence of lost wages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. We have held that "[a] jury's award of damages will not be set aside unless the award is 'entirely disproportionate to the injury sustained.' " *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1236 (5th Cir.1989) (quoting *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983)).

■ In *Flanagan*, we explained that "[a] certain amount of emotional distress may be assumed from the racially motivated treatment [the plaintiff] received from the defendants." *Id.* There was sufficient evidence of the racially motivated mistreatment here and the jury heard testimony that this adversely affected Rhines. *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 (5th Cir.2000) (holding that a Title VII plaintiff's testimony that her employment discharge resulted in sleep loss, smoking, and weight loss was sufficient to support an award of $100,000 in compensatory damages). Accordingly, Salinas Construction's challenge to the compensatory damages fails.

### D.

Salinas Construction also argues that the evidence does not support the $40,000 award of punitive damages, or in the alternative, that the damages are excessive. "A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Boh Bros.*, 731 F.3d at 467 (internal quotation marks and citation omitted). "The terms 'malice' and 'reckless' ultimately focus on the actor's

state of mind." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (citing Black's Law Dictionary 956–57, 1270 (6th ed.1990); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Law of Torts 212–14 (5th ed.1984)). The Supreme Court has stated that "a positive element of conscious wrongdoing is always required." *Id.* at 538, 119 S.Ct. 2118 (internal quotation marks and citation omitted); *see also Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir.2000). Because the standard for proving punitive damages is higher than for compensatory damages, the Supreme Court has explained that "punitive awards are available to a subset of those involving intentional discrimination." *Kolstad*, 527 U.S. at 535, 119 S.Ct. 2118.

■ According to Salinas Construction, the jury disregarded its good faith efforts to investigate and stop the alleged discrimination. *See id.* at 545–46, 119 S.Ct. 2118 (stating that even if particular agents acted with malice or reckless indifference, an employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII). However, the jury heard and saw evidence that Salinas Construction did not act in good faith and provided false information and affidavits to the EEOC about Rhines's complaints. Specifically, the jury heard testimony that even though Rhines had submitted a letter detailing his complaints, Salinas Construction told the EEOC that Rhines had never complained. Furthermore, Salinas Construction knew its employees used racial epithets to refer to Rhines, yet submitted employee affidavits to the EEOC stating that they never used racial epithets. One of the employees who submitted an affidavit testified at trial that it was false. Moreover, Salinas Construction maintained at trial that it had conducted an investigation into Rhines's complaints, but the person who allegedly

performed the investigation testified before the jury that he did not investigate. There was sufficient evidence to support the jury's award of punitive damages.

### E.

In addition to the damages award, the district court awarded Rhines attorney's fees. "The Civil Rights Act of 1964 provides that a 'prevailing party' in a suit brought under Title VII is entitled to recover [his] attorneys' fees and costs." *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1153 (5th Cir.1995) (citing 42 U.S.C. § 2000e–5(k)). "The award· of attorneys' fees, nevertheless,· rests within the discretion of the district court." *Id.* We will not reverse an award of attorney's fees unless the trial court abused its discretion or based its award on clearly erroneous findings of fact. *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir.1989).

In only three sentences in its opening brief, Salinas Construction states that the award of attorney's fees was against the manifest weight of the evidence. This is far from adequately briefed. "A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir.2010) (citation omitted). Salinas Construction has therefore waived its argument.

■ Even assuming *arguendo* Salinas Construction properly briefed the issue, the district court did not clearly err. "We review the district court's initial determination of reasonable hours and reasonable rates for clear error, and its application of the *Johnson* factors for abuse of discretion." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998) (referring to the factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). The district court held an evidentiary hearing subsequent to trial on the award of fees. To determine reasonable attorney's fees, the district court calculated the fees through a two-step lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir.1995). In the first step, the district court determined the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney. It then calculated the lodestar amount by multiplying the reasonable number of hours by the reasonable hourly rate. *Id.* at 324.

After discussion of each of the *Johnson* factors, the district court decided to reduce Rhines's submitted hours and determined that Rhines's counsel's timesheets "accurately reflect the time and labor required to represent the client," and observed that over a year and a half period, Salinas Construction's counsel billed for nearly the identical hours as Rhines's counsel. The district court further noted that the hourly fee of $250 "is reasonable and within the range of customary fees charged by someone in this field and in this geographic area with similar experience." Given the record, Salinas Construction has not shown that the district court's award of attorney's fees was error, much less an abuse of discretion.

AFFIRMED.